## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MERRYL D. WEISS, wife of and,** | * | **CIVIL ACTION** |
| **ROBERT U. WEISS, JR., M.D.** | * | **CASE # 06-3774** |
| | * | |
| **Plaintiffs** | * | **SECTION " R "** |
| | * | **JUDGE VANCE** |
| | * | |
| *Versus* | * | |
| | * | **MAGISTRATE # 5** |
| **ALLSTATE INSURANCE COMPANY** | * | **(CHASEZ)** |
| | * | |
| **Defendant** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

TO:   ALLSTATE INSURANCE COMPANY,
      through its attorney of record,
      Ms. Judy Y. Barasso
      **Barasso, Usdin, Kupperman,**
      **Freeman & Sarver**
      LL & E Tower
      909 Poydras Street
      New Orleans, LA 70112

## PLAINTIFFS' INTERROGATORIES, REQUEST FOR PRODUCTION
## OF DOCUMENTS and REQUEST FOR ADMISSSIONS

The following discovery requests are propounded to you under the authority of the Federal Rules of Civil Procedure. You are to answer the **Interrogatories** separately, fully, in writing, and under oath, and your answers are to be served upon plaintiff through her attorney of record, *Richard C. Trahant, 2908 Hessmer Ave., Metairie, Louisiana, 70002,* within the time allowed by law. These discovery requests are deemed continuing, and if the party to whom they are addressed acquires additional or corrected information subsequent to the filing of answers hereto, supplemental answers are to be immediately filed supplying undersigned counsel with all full and correct information, in accordance with the Federal Rules of Civil Procedure.

Pursuant to the Federal Rules of Civil Procedure, plaintiff requests that defendant respond to the

1



following **Request for Production of Documents** by producing and permitting the inspection and reproduction of the following documents within the time allowed by law.

a) This discovery is continuing in character, so as to require you to file supplementary answers if you obtain further or different information before trial.

b) Unless otherwise indicated, this discovery refers to the time, place and circumstances of the incidents mentioned or complained of in the pleadings filed in this matter.

c) Where knowledge or information in possession of a party is requested, such request includes knowledge of the party's agents, and unless privileged, his attorney.

## DEFINITIONS:

1. The terms "you" and "your" shall mean **Allstate Insurance Company**, its agents (including independent adjusters and consultants), employees and/or attorneys of record.

2. The term "person" shall mean any individual, partnership, corporation or any other business or legal entity.

3. The term "document" shall mean all written, printed, typed, recorded or graphic matter, including, but not limited to letters, correspondence, telegrams, messages of any kind, memoranda, internal memoranda, reports, contracts, handwritten notes, diaries, calendars, records, logs, minutes of meetings, corporate records, drawings, graphs, charts, photographs, recordings whether taped or otherwise, time cards, and employment records.

4. The term "identify" when used with respect to a person means his or her full name, title or position, current or last known address, telephone number and current or last known employer.

5. The term "identify" when used with respect to a corporation or business means the full name of the business, its field of industry, its current or last known working address and telephone number, the dates the business started and ended, and an identification of all incorporators, officers, partners and/or proprietors of the business.

6. The term "statement previously made" shall mean (a) a written statement signed or otherwise adopted or approved by the person making it, or (b) a stenographic, mechanical, electrical, or other recording, or transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

2

You are requested to respond to the **Requests for Admission** within the time delays prescribed by the Federal Rules of Civil Procedure and any objections made shall be specifically stated. Your answer shall specifically deny or set forth in detail the reasons why you cannot truthfully admit or deny the matters requested. If a response requires a qualification of any answer, or denies only a part of a matter requested to be admitted, you shall then specify so much of it as true and qualify or deny the remainder.

## *INTERROGATORIES*

## INTERROGATORY NO. 1:

Please identify each and every person who participated in answering this discovery, by giving their names, addresses, telephone numbers, by what company said person is employed, and in what position said person is currently employed with their respective companies. *(Additionally, please have all individuals participating in responding to this discovery sign sworn verifications relative to these responses. A response that Allstate's counsel responded to the discovery is insufficient).*

## INTERROGATORY NO. 2:

Please state the full name of your company and the address of its principal place of business, and indicate the type of entity it exists as (corporation, partnership, limited liability company or otherwise), indicate the date of incorporation, organization, registered or otherwise.

## INTERROGATORY NO. 3:

Please give the name, address, telephone number and position held for the following individuals:

Philip Cagnina

3

Mike Wells

Dawin Price

William Smalling

Henry Barnes

Tommy Temple

David Huey

Tony Fike

Gary Ensey

Jason Morgan

Tina (Lake Mary Florida office)

Terri Campbell

Tammy Abney

Jerry Higgins

In answering this interrogatory, please state whether each of the individuals listed above is still employed, or performing contract work, on behalf of Allstate Insurance Company.

## INTERROGATORY NO. 4:

Please identify any and all agents and/or employees of Allstate **(including in-house counsel)** who participated, in any way, in the evaluating and/or adjusting or supervising the evaluation and/or adjustment of the Weiss claims for property damage at issue (Hurricane Katrina claim) by stating each individual's full name, home and work address, home and work telephone number, social security number, **and a detailed narrative outlining the scope, responsibilities, and participation on said claim of each particular individual and the date**

4

any activity was performed. This Interrogatory includes any and all independent adjusters and/or consultants retained, used or employed by Allstate.

## INTERROGATORY NO. 5:

Please state in detail the policies, practices and/or procedures used by Allstate to determine the Weisses' losses from Hurricane Katrina. This Interrogatory calls for information including, but not limited to, the policies, practices and/or procedures, set forth verbally or in writing, and used by Allstate in its fundamental approach in attempting to adjust property damage claims, including large scale and extensive property damage claims.

## INTERROGATORY NO. 6:

Please identify each person or entity who/which participated in the creation of the policies, practices and/or procedures described in Interrogatory No. 5 above by stating each person's business address, position with Allstate or any consulting company, telephone number, and a description of each person's participation in the creative process.

## INTERROGATORY NO. 7:

Please state in detail the policy, practice and/or procedure, and each separate step that was used to determine any time limits which obligated Allstate to tender money to the Weisses under their policy or to make a written offer to settle their claim.

## INTERROGATORY NO. 8:

Please provide the names of all witnesses Allstate intends to call at a trial on the merits of this matter and provide their names, addresses, telephone numbers, occupations, employers, employers' addresses and telephone numbers, whether each witness is a fact witness or will be sought to be qualified as an expert, and provide a detailed statement (as best you are able at this stage of the

5

litigation) as to the substance, facts, and nature of the testimony to be provided by each witness.

## INTERROGATORY NO. 9:

Please list each and every exhibit, real or demonstrative, that Allstate will or may attempt to introduce as evidence, or for other purposes, at the trial of this matter, listing the name of the person who possesses such exhibit or evidence and where the original may be inspected.

## INTERROGATORY NO. 10:

Please state in detail any policies, practices and/or procedures used by Allstate, *which were specifically created after Hurricane Katrina*, to determine whether property losses were caused by wind, water or a combination of the two. This Interrogatory calls for information including, but not limited to, the policies, practices and/or procedures, set forth verbally or in writing, and used by Allstate in its fundamental approach in attempting to adjust homeowners' property damage claims.

## INTERROGATORY NO. 11:

Please state what method, procedure or other means was used, primarily or otherwise, by Allstate in determining the amount of the Weiss loss related to wind damage. In doing so, please specifically recount each and every communication each Allstate representative had with Rimkus or any other individual/company, if any, for the purpose of determining cause and origin of the wind damage, as well as the extent of any damage caused by wind.

## INTERROGATORY NO. 12:

Please explain Allstate's position with respect to the nature of "wind damage" sustained by each property it insured on Treasure Isle on August 29, 2005. In answering this Interrogatory, plaintiffs are requesting reference to any and all weather reports or other data on

6

which Allstate relied, with specific reference to the timing of wind damage and water damage on Treasure Isle, if any.

## INTERROGATORY NO. 13:

Please identify the person(s) who was ultimately in charge of ascribing an amount to the Weisses' losses under their Allstate homeowner's policy.

## INTERROGATORY NO. 14:

Please explain why William Dekemel and John Schutte, M.D., neighbors of Dr. and Mrs. Weiss on Treasure Isle, were paid their full homeowner's policy limits, while the Weisses were not. In doing so, please explain how the cause and origin of the Weiss loss differed from the cause and origin of the Dekemel and Schutte losses.

## INTERROGATORY NO. 15:

If you contend that any actions of the Weisses, or anyone acting on their behalf, impeded Allstate's ability to adjust this loss, please explain in detail.

## INTERROGATORY NO. 16:

Please state the number of homeowner's claims opened by Allstate as a result of Hurricane Katrina in Louisiana.

## INTERROGATORY NO. 17:

Please identify all lawsuits (including case caption), which have been filed against Allstate as a result of claims from Hurricane Katrina thus far. If any claims in Louisiana have gone to verdict or judgment after trial, please specifically designate these cases.

## INTERROGATORY NO. 18:

Are Allstate's homeowner's losses from Hurricane Katrina covered, in any way, by any

7

reinsurers? If so, please identify all of the reinsurers and explain to what extent these reinsurers would be responsible for covering any claims made by Allstate homeowner's policyholders.

## INTERROGATORY NO. 19:

Where is the Weiss claims file maintained (kept, possessed) and by whom is it maintained (please provide the name and address for the Allstate employee)? Is there a separate claim file relative to the Weiss claim, which is maintained in Northbrook, Illinois, or anywhere outside of Louisiana? If so, please explain where and why there is more than one claims file. In doing so, please explain whether the maintaining of more than one claims file is routine relative to property damage claims and Hurricane Katrina claims.

## INTERROGATORY NO. 20:

Please identify by case caption any lawsuit (in any state) in which Allstate, or any of its counsel, has been sanctioned or reprimanded relative to discovery in Hurricane Katrina cases.

## INTERROGATORY NO. 21:

Please identify the number of Hurricane Katrina claims on which Allstate has employed Rimkus Consulting Group, Inc.

## INTERROGATORY NO. 22:

Please explain your understanding of why Rimkus' Gary Bell told Mrs. Weiss, via e-mail, that the engineering report was competed on December 30, 2005, but the report is not dated until February 1, 2006. In doing so, please explain your understanding of any and all revisions made to the Rimkus report, at any time.

## INTERROGATORY NO. 23:

Please explain why no Allstate representative was present when the Rimkus engineers

8

inspected the Weiss property.

## INTERROGATORY NO. 24:

Please explain your understanding of why the Rimkus engineers, Jim Neva and Tao Xiong, indicated to Dr. and Mrs. Weiss that the majority of their loss was caused by wind damage.

# *REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS*

## REQUEST FOR PRODUCTION NO.1:

Please produce any videotape taken of the Weiss property. This would include any videotape taken by the Weisses' Allstate agent before Hurricane Katrina.

## REQUEST FOR PRODUCTION NO.2:

Please produce copies of any and all documents, including calculations, as to the ALE (Additional Living Expenses) portion of the Weiss claim.

## REQUEST FOR PRODUCTION NO. 3:

Please produce copies of each and every exhibit, real or demonstrative, that Allstate will, or may attempt to, introduce as evidence or attempt to use for other purposes at the trial of this matter.

## REQUEST FOR PRODUCTION NO. 4:

Please produce copies of any and all correspondence between Allstate and any of its employees, independent adjusters, consultants or anyone else having any involvement in the claims of Dr. and Mrs. Weiss relative to their claim.

## REQUEST FOR PRODUCTION NO. 5:

Please produce copies of any and all memoranda, manuals, bulletins, instructions and/or

9

documents which memorialize, identify, inform and/or advise employees and/or agents of Allstate on how to handle, adjust or otherwise address a property damage claim.

## REQUEST FOR PRODUCTION NO.6:

Please produce the entirety of *general files* maintained by Allstate relative to losses from Hurricane Katrina. In other words, plaintiff is requesting the production of any and all files that are maintained by Allstate resulting from Hurricane Katrina, but which files are not specific to the claims of any of Allstate's insureds.

## REQUEST FOR PRODUCTION NO.7:

Produce any and all computer entries (diaries, logs, file notes, etc.) maintained by any Allstate employee (including independent adjusters) from the inception of this claim, which are related to this claim. This includes all computer entries made by any employee of Allstate, even if these individuals have not been identified in your Answer to Interrogatory number 4.

## REQUEST FOR PRODUCTION NO. 8:

Produce any and all worksheets, handwritten notes and/or e-mails contained in the file. This request is meant to include all portions of the file which are not part of the "claims diary" or "claims log."

## REQUEST FOR PRODUCTION NO. 9:

Produce any and all forms dealing, in any way, with reserves or monetary authority relative to this claim, whether filled out or not.

## REQUEST FOR PRODUCTION NO. 10:

Produce any and all interoffice or intraoffice communications between employees of Allstate or any of its independent adjusters and/or consultants relative to this claim.

10

## REQUEST FOR PRODUCTION NO. 11:

Produce any and all correspondences between Allstate and Rimkus, or any other outside company, including any expert *consulted*, relative to this claim; this request includes correspondence from counsel to experts and from experts to counsel.

## REQUEST FOR PRODUCTION NO.12:

Produce any communications, or documentation thereof, between Allstate and *any* individual, other than the Weisses or their counsel, relative to this claim.

## REQUEST FOR PRODUCTION NO.13:

Produce any and all investigatory documents prepared by, or on behalf of, Allstate regarding any aspect of this claim. This request includes any investigation conducted into plaintiffs' backgrounds (including but not limited to: insurance index bureaus, investigation reports, criminal record checks, traffic checks, credit checks and/or courthouse records checks).

## REQUEST FOR PRODUCTION NO.14:

Produce any and all communications with any *retained/testifying* expert relative to plaintiff's claim.

## REQUEST FOR PRODUCTION NO. 15:

Produce any and all drafts or checks made out for any costs relative to this claim(s).

## REQUEST FOR PRODUCTION NO.16:

Produce the index to the claims file or a designation of sections to the claims file as maintained by Allstate.

## REQUEST FOR PRODUCTION NO.17:

Produce copies of any and all Judgments or Orders (whether final or not) referenced in

11

Interrogatory number 20.

## REQUEST FOR PRODUCTION NO.18:

Notwithstanding any expert reports which are subject to the Court ordered deadlines, please produce copies of any documents generated by any consulting expert or testifying expert.

## REQUEST FOR PRODUCTION NO.19:

Please produce copies of any and all photographs in the possession of Allstate, its experts/consultants, or anyone it has employed relative to the Weiss claims.

## REQUEST FOR PRODUCTION NO.20:

Please produce copies of any and all documents in Allstate's claims file relative to the Weiss claim, which have not been specifically identified herein.

## REQUEST FOR PRODUCTION NO.21:

Please produce copies of any and all communications, grievances or complaints that have been provided to Allstate by the Louisiana Department of Insurance and/or the Louisiana Insurance Commissioner, and if any, Allstate's responses, specifically dealing with the issue of Allstate paying one of its insureds in a particular geographical area full homeowner's limits, but then asserting that another insured in that same area incurred the majority of his/her damages from flood.

## REQUEST FOR PRODUCTION NO.22:

Please produce a copy of the entire claims file relative to the claim of William Dekemel.

## REQUEST FOR PRODUCTION NO.23:

Please produce a copy of the entire claims file relative to the claim of John Schutte, M.D.

## REQUEST FOR PRODUCTION NO.24:

Please produce copies of any and all damage estimates (whether complete or incomplete) or

12

reports relative to the Wiess claim.

## *REQUEST FOR ADMISSIONS*

*(If Allstate denies any Request, please give a detailed explanation as to why.)*

### REQUEST FOR ADMISSION NO. 1:

Please admit that Allstate never has made a written offer to settle the Weisses' homeowner's claim.

### REQUEST FOR ADMISSION NO. 2:

Please admit that no representative of Allstate inspected the Weisses' property within 30 days of Allstate's being notified of the claim.

### REQUEST FOR ADMISSION NO. 3:

Please admit that Allstate had some doubt as to the extent of wind damage as the cause and origin of the Weisses' loss.

### REQUEST FOR ADMISSION NO. 4:

Please admit that Allstate is aware of no specific facts to support the specific amounts of structural damage paid to the Weisses under their homeowner's policy (for example, Allstate has no knowledge of how, or to what extent, the Weisses' roof was damaged).

### REQUEST FOR ADMISSION NO. 5:

Please admit that Allstate has no information to suggest that the Weiss home was not completely demolished by wind *before* any storm surge from Lake Pontchartrain arrived on Treasure Isle.

### REQUEST FOR ADMISSION NO. 6:

Please admit that Allstate is aware that Rimkus Consulting Group, Inc. has been accused of

13

falsifying and/or forging names on reports relative to Hurricane Katrina claims.

## REQUEST FOR ADMISSION NO. 7:

Please admit that Allstate is aware that Rimkus changed its report and altered its findings relative to the Weiss claim.

## REQUEST FOR ADMISSION NO. 8:

Please admit that William and Bonnie Dekemel were paid their full homeowner's policy limits by Allstate Insurance Company.

## REQUEST FOR ADMISSION NO. 9:

Please admit that John Schutte, M.D. and Mary Schutte were paid their full homeowner's policy limits by Allstate Insurance Company.

## REQUEST FOR ADMISSION NO. 10:

Please admit that Glenn and Beverly Gaethe were paid their full homeowner's policy limits by Allstate Insurance Company.

## REQUEST FOR ADMISSION NO. 11:

Please admit that Lee and Peggy Nugent were paid their full homeowner's policy limits by Allstate Insurance Company.

## REQUEST FOR ADMISSION NO. 12:

Please admit that Harry and Lisette Verlander were paid their full homeowner's policy limits by Allstate Insurance Company.

## REQUEST FOR ADMISSION NO. 13

Please admit that Bryan Eichorn was paid his full homeowner's policy limits by Allstate Insurance Company.

14

## REQUEST FOR ADMISSION NO. 14:

Please admit that Guy and Margie Smith were paid their full homeowner's policy limits by

Allstate Insurance Company.

## REQUEST FOR ADMISSION NO. 15:

Please admit that Frank and Mary Ferguson were paid their full homeowner's policy limits by

Allstate Insurance Company.

## REQUEST FOR ADMISSION NO. 16:

Please admit that it is Allstate's position that the extent of damage due to wind could not be

determined relative to the Weiss claim.

**RESPECTFULLY SUBMITTED,**

**RICHARD C. TRAHANT (#22653) T.A.**
ATTORNEY AT LAW
2908 Hessmer Ave.
Metairie, Louisiana 70002
(504) 780-9891
FAX (504) 780-7741

-And-

**JACK E. MORRIS (#22539)**
ATTORNEY AT LAW
4051 Veterans Blvd. Suite 208
Metairie, LA 70002
(504) 454-2769
FAX (504) 454-3855

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record by depositing same into the U.S. Mail, postage prepaid and properly addressed, by facsimile or by hand this 6th day of December, 2006.

RICHARD C. TRAHANT

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MERRYL D. WEISS, wife of/and | * | CIVIL ACTION NO.: 06-cv-3774 |
| ROBERT U. WEISS, JR., M.D. | * | |
| | * | JUDGE: VANCE (R) |
| VERSUS | * | |
| | * | MAGISTRATE: CHASEZ (5) |
| ALLSTATE INSURANCE COMPANY | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT ALLSTATE INSURANCE COMPANY'S RESPONSE TO PLAINTIFFS' INTERROGATORIES, REQUEST FOR PRODUCTION OF DOCUMENTS AND REQUEST FOR ADMISSIONS

NOW INTO COURT, through undersigned counsel, comes Allstate Insurance

Company ("Allstate"), who responds to Plaintiffs' Interrogatories, Request for Production of

Documents and Request for Admissions as follows:

### OBJECTIONS APLICABLE TO EACH REQUEST

A.      Plaintiffs have failed to define, with specificity or otherwise, any of the terms

used in the requests. Consequently, Allstate will use those terms to the best of its understanding.

B.      Allstate objects to the discovery requests as overbroad and unduly burdensome

insofar as they seek information already in the possession, custody, or control of the plaintiffs.

C.      Allstate objects to the extent that any request or interrogatory may be construed as

calling for documents or information subject to a claim of privilege or other protective doctrine,

1



including, without limitation, the attorney-client privilege and the work product or anticipation of litigation doctrines, and the self-evaluation privilege, and its responses and production shall exclude any such privileged or protected information and documentation. It is not Allstate' intention to waive any privileges, and to the extent any privileged or protected document is produced, that production is inadvertent.

D.     The responses pursuant to this written response, or any later responses, are without prejudice to Allstate' right to object later that any such document or information is protected by the attorney-client privilege or the work product and/or anticipation of litigation doctrines. It is specifically represented that production of any such protected document is inadvertent. Nor shall the production of any document be construed as an admission by Allstate that said document is relevant, material, authentic, or otherwise admissible as evidence. Allstate reserves any and all objections to admissibility at trial of any document produced hereunder.

E.     Allstate objects to the discovery requests to the extent they seek information containing or constituting trade secrets or other confidential or proprietary business information of Allstate and/or of third parties, and Allstate will not produce any such documents in the absence of the entry of an appropriate protective order in the case.

F.     Allstate objects to the discovery requests to the extent they seek confidential and/or proprietary information, and Allstate will not provide such information until an appropriate protective order is entered to protect this information.

G.     Allstate objects to the discovery requests to the extent they seek documents or information not in the possession, custody or control of Allstate.

73894

H.    Allstate objects to the discovery requests to the extent that they purport to impose obligations on Allstate that exceed the scope of discovery under the Federal Rules of Civil Procedure and the local rules of this Court.

I.    Allstate objects to the requests to the extent that they seek to compel Allstate to produce "all" documents of a certain category. Use of the term "all" is overly broad and unduly burdensome in the context of this case and with regard to the nature of the claims and defenses asserted. Allstate is a large corporation that often has documents stored in multiple locations for different purposes under the supervision of multiple individuals. Searching its records, which are maintained in several different locations, for "all" documents of a certain type would be an unduly burdensome undertaking. To the extent that Allstate states that it will produce documents, such a response is meant to indicate that Allstate has undertaken a good faith search to locate responsive documents in files where it believes that such documents would likely be found, if they existed.

J.    Allstate objects to the requests under Rule 33 of the Federal Rules of Civil Procedure to the extent that Interrogatories exceed 25 in number, including all discrete subparts.

K.    Allstate' investigation into the claims and defenses raised in this lawsuit is ongoing, and Allstate expressly reserves the right to amend, modify and/or supplement its responses to these discovery requests.

## RESPONSES TO INTERROGATORIES

## INTERROGATORY NO. 1:

Please identify each and every person who participated in answering this discovery, by giving their names, addresses, telephone numbers, by what company said person is

3                                                                      73894

employed, and in what position said person is currently employed with their respective companies. **(Additionally, please have all individuals participating in responding to this discovery sign sworn verifications relative to these responses. A response that Allstate's counsel responded to the discovery is insufficient.)**

## ANSWER TO INTERROGATORY NO. 1:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 1 as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Allstate further objects to this interrogatory to the extent it seeks information protected by the work product and/or attorney client privileges. Finally, Allstate objects to the request, to the extent that it seeks information and/or documents not subject to discovery under the Federal Rules of Civil Procedure. Subject to all objections, Allstate asserts that, in addition to the undersigned counsel, Anthony Lozado, Allstate file handler, participated in answering this discovery. Mr. Lozado's telephone number 1-877-286-3510 (ext. 13002).

## INTERROGATORY NO. 2:

Please state the full name of your company and the address of its principle place of business, and indicate the type of entity it exists as (corporation, partnership, limited liability company or otherwise), indicate the date of incorporation, organization, registered or otherwise.

## ANSWER TO INTERROGATORY NO. 2:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 2 as unduly burdensome in that Plaintiffs can easily obtain the information sought in the public records. Subject to all objections, Allstate states that its full name is Allstate Insurance Company and that Allstate Insurance Company is a corporation that maintains an address at 3075 Sanders Road, Suite H1a, Northbrook, Illinois 60062-7127.

4                                                                                    73894

## INTERROGATORY NO. 3:

Please give the name, address, telephone number and position held for the
following individuals:

Philip Cagnina
Mike Wells
Dawin Price
William Smalling
Henry Barnes
Tommy Temple
David Huey
Tony Fike
Gary Ensey
Jason Morgan
Tina (Lake Mary Florida office)
Terri Campbell
Tammy Abney
Jerry Higgins

In answering this interrogatory, please state whether each of the individuals listed
above is still employed, or performing contract work, on behalf of Allstate Insurance Company.

## ANSWER TO INTERROGATORY NO. 3:

Subject to the Objections Applicable to Each Request, Allstate responds as

follows:

Philip Cagnina, Pilot adjuster

Mike Wells, Pilot structure adjuster

Dawin Price, Pilot adjuster

William Smalling

Henry Barnes, Pilot structure adjuster
Post Office Box 1001
Bayou LaBatre, AL 36509
Phone: (251) 824-4770

Tommy Temple, Pilot adjuster
Post Office Box 191192
Mobile, AL 36619
Phone: (251) 661-4029

73894

David Huey

Tony Fike

Gary Ensey, Pilot structure adjuster

Jason Morgan, Allstate file handler previously assigned to Weiss claim
1101 Greenwood Boulevard, Suite 301
Lake Mary, FL 32746
Phone: (877) 286-3510 (ext. 13268)

Tina Thompson, Pilot contents adjuster

Terri Campbell, claim coordinator, mediation unit
P.O. Box 952379
Lake Mary, FL 32795
Phone: (877) 286-3510 (ext. 13410)

Tammy Abney, Pilot contents adjuster

Jerry Higgins

Allstate further states that it is continuing to investigate with respect to the request

and will supplement its response when additional responsive information becomes available.

Until Allstate is able to obtain contact information for each of the persons listed, Allstate states

that Plaintiffs may contact the listed persons through undersigned counsel.

## INTERROGATORY NO. 4:

Please identify any and all agents and/or employees of Allstate **(including in-house counsel)** who participated, in any way, in the evaluating and/or adjusting or supervising the evaluation and/or adjustment of the Weiss claims for property damage at issue (Hurricane Katrina claim) by stating each individual's full name, home and work address, home and work telephone number, social security number, **and a detailed narrative outlining the scope, responsibilities, and participation on said claim of each particular individual and the date any activity was performed.** This Interrogatory includes any and all independent adjusters and/or consultants retained, used or employed by Allstate.

6

73894

## ANSWER TO INTERROGATORY NO. 4:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 4 as vague, ambiguous, overly broad and not calculated to lead to the discovery of admissible evidence. Allstate further objects to this interrogatory to the extent it seeks information protected by the work product and/or attorney client privileges. Finally, Allstate further objects to the interrogatory on the grounds that the terms "participated" and "evaluating" are not defined, making it difficult for Allstate to respond. Subject to all objections, Allstate asserts that the following individuals participated in the evaluating and/or adjusting or supervising of the Weiss homeowner claim, to the best of Allstate's knowledge: Ronald D. Rhoads, Pilot adjuster; Phillip Cagnina, IV, Pilot adjuster; Darwin Blake Price, Pilot adjuster; Michael Wells, Pilot structure adjuster; Greg Lott, Pilot ALE adjuster; Tina Thompson, Pilot contents adjuster; Tammany Barnette, Pilot ALE adjuster; Tammy Abney, Pilot contents adjuster; April Hammonds, Pilot ALE adjuster; Tom Temple, Pilot structure field adjuster; Gary Ensy, Pilot structure adjuster; Jason Morgan, Allstate file handler.

With respect to the request for a description of the participation of each named person, Allstate produces non-privileged portions of the claims file for your review. Allstate further states that it is continuing to investigate with respect to the request and will supplement its response when additional responsive information becomes available. Until Allstate is able to obtain contact information for each of the persons listed, Allstate states that Plaintiffs may contact the listed persons through undersigned counsel.

## INTERROGATORY NO. 5:

Please state in detail the policies, practices and/or procedures used by Allstate to determine the Weisses' losses from Hurricane Katrina. This Interrogatory calls for information including, but not limited to, the policies, practices and/or procedures, set forth verbally or in

7                                                                                    73894

writing, and used by Allstate in its fundamental approach in attempting to adjust property damage claims, including large scale and extensive property damage claims.

## ANSWER TO INTERROGATORY NO. 5:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 5 as vague, ambiguous, overly broad, unduly burdensome, not temporally limited, and not reasonably calculated to lead to the discovery of admissible evidence. Allstate also objects to the interrogatory to the extent that the information sought is protected by the attorney-client privilege and/or the work product privilege. Additionally, Allstate objects to the interrogatory on the grounds that the terms "policies," "practices," "procedures" and "fundamental approach" are not defined, making it difficult, if not impossible, for Allstate to respond. Finally, Allstate objects to this request on the basis that it seeks documents containing proprietary and confidential information and/or trade secrets. Subject to all objections, Allstate states it relies on numerous sources of information in adjusting claims, including the insured's policy, proofs of loss or other information submitted by an insured and data obtained in investigating the property.

## INTERROGATORY NO. 6:

Please identify each person or entity who/which participated in the creation of the policies, practices and/or procedures described in Interrogatory No. 5 above by stating each person's business address, position with Allstate or any consulting company, telephone number, and a description of each person's participation in the creative process.

## ANSWER TO INTERROGATORY NO. 6:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 6 as vague, ambiguous, overly broad, unduly burdensome, not temporally limited and not reasonably calculated to lead to the discovery of admissible evidence. Allstate also objects to the interrogatory to the extent that the information sought is protected by the

8                                                                                    73894

attorney-client privilege or the work product privilege. Finally, Allstate objects to the interrogatory on the grounds that the terms "creation," "policies," "practices" and "procedures" are not defined, making it difficult, if not impossible, for Allstate to respond.

## INTERROGATORY NO. 7:

Please state in detail the policy, practice and/or procedure, and each separate step that was used to determine any time limits which obligated Allstate to tender money to the Weisses under their policy or to make a written settle their claim.

## ANSWER TO INTERROGATORY NO. 7:

In addition to the Objections Applicable to Each Request, Allstate objects to
Interrogatory No. 7 as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Allstate also objects to the interrogatory to the extent that the information sought is protected by the attorney-client privilege or the work product privilege and/or calls for a legal conclusion. Finally, Allstate objects to the interrogatory on the grounds that the terms "policies," "practices" and "procedures" are not defined, making it difficult, if not impossible, for Allstate to respond. Subject to all objections, Allstate refers Plaintiffs to, among other things, the Louisiana Revised Statutes and the Weiss' policy, policy No. 021969551, which speak for themselves.

## INTERROGATORY NO. 8:

Please provide the names of all witnesses Allstate intends to call at a trial on the merits of this matter and provide their names, addresses, telephone numbers, occupations, employers, employers' addresses and telephone numbers, whether each witness is a fact witness or will be sought to be qualified as an expert, and provide a detailed statement (as best you are able at this state of the litigation) as to the substance, facts, and nature of the testimony to be provided by each witness.

## ANSWER TO INTERROGATORY NO. 8:

Allstate objects to Interrogatory No. 8 as premature, as Allstate has not yet determined what witnesses it may call at trial. Allstate further states that it will provide a witness

9

list in accordance with the Court's Scheduling Order. Subject to all objections, Allstate states

that it may call as a witness any of the persons identified in response to Interrogatory No. 4.

## INTERROGATORY NO. 9:

Please list each and every exhibit, real or demonstrative, that Allstate will or may attempt to introduce as evidence, or for other purposes, at the trial of this matter, listing the name of the person who possesses such exhibit or evidence and where the original may be inspected.

## ANSWER TO INTERROGATORY NO. 9:

Allstate objects to Interrogatory No. 9 as premature, as Allstate has not yet determined what exhibits it may introduce at trial. Allstate further states that it will provide an exhibit list in accordance with the Court's Scheduling Order. Subject to all objections, Allstate states that it may introduce any of the attached responsive documents as evidence at trial.

## INTERROGATORY NO. 10:

Please state in detail any policies, practices and/or procedures used by Allstate, *which were specifically created after Hurricane Katrina*, to determine whether property losses were caused by wind, water or a combination of the two. This Interrogatory calls for information including, but not limited to, the policies, practices and/or procedures, set forth verbally or in writing, and used by Allstate in its fundamental approach in attempting to adjust homeowners' property damage claims.

## ANSWER TO INTERROGATORY NO. 10:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 10 as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Allstate also objects to the interrogatory to the extent that the information sought is protected by the attorney-client privilege or the work product privilege. Additionally, Allstate objects to the request on the basis that it seeks documents containing proprietary and confidential information and/or trade secrets. Finally, Allstate objects to the interrogatory on the grounds that the terms "creation," "policies," "practices" and "procedures" are not defined, making it difficult, if not impossible, for Allstate to

10                                                                                      73894

respond. Subject to all objections, Allstate states it relies on numerous sources of information in adjusting claims, including the insured's policy, proofs of loss and other information provided by an insured and data obtained in investigating the property.

## INTERROGATORY NO. 11:

Please state what method, procedure or other means was used, primarily or otherwise, by Allstate in determining **the amount** of the Weiss loss related to wind damage. In doing so, please specifically recount each and every communication each Allstate representative had with Rimkus or any other individual/company, if any, for the purpose of determining cause and origin of the wind damage, as well as the extent of any damage caused by wind.

## ANSWER TO INTERROGATORY NO. 11:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 11 as vague, ambiguous, overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and on the basis that the terms "method" and "procedure" are not defined, making it difficult, if not impossible for Allstate to respond. Allstate also objects to the interrogatory to the extent that the information sought is protected by the attorney-client privilege or the work product privilege. Additionally, Allstate objects to the request on the basis that it seeks documents containing proprietary and confidential information and/or trade secrets. Subject to all objections, Allstate states it relies on numerous sources of information in adjusting claims, including the insured's policy, proofs of loss and other information provided by an insured and data obtained in investigating the property. Additionally, Allstate states that it will produce the non-privileged portions of the Weiss claim file in response to this Request.

## INTERROGATORY NO. 12:

Please explain Allstate's position with respect to the nature of "wind damage" sustained by **each property** it insured on Treasure Isle on August 29, 2005. In answering this Interrogatory, plaintiffs are requesting reference to any and all weather reports or other data on

11                                                                                  73894

which Allstate relied, with specific reference to the timing of wind damage and water damage on Treasure Isle, if any.

## ANSWER TO INTERROGATORY NO. 12:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 12 as vague, ambiguous, overly broad, unduly burdensome and seeking confidential private information pertaining to persons not a party to this lawsuit, which information is not reasonably calculated to lead to the discovery of admissible evidence. Allstate further objections and on the basis that the terms "position" and "nature" are not defined, making it difficult, if not impossible, for Allstate to respond. Allstate also objects to the request to the extent that information subject to the attorney-client privilege and/or work product privilege is sought. Additionally, Allstate objects to the Interrogatory on the basis that it seeks information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

## INTERROGATORY NO. 13:

Please identify the person(s) who was ultimately in charge of ascribing an amount to the Weisses' losses under their Allstate homeowner's policy.

## ANSWER TO INTERROGATORY NO. 13:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 13 as vague, ambiguous and overly broad, and on the basis that the term "in charge" is not defined, making it difficult, if not impossible to respond. Subject to all objections, Allstate produces non privileged portions of the Weiss claim file in response.

## INTERROGATORY NO. 14:

Please explain why William Dekemel and John Schutte, M.D., neighbor of Dr. and Mrs. Weiss on Treasure Isle, were paid their full homeowner's policy limits, which the Weisses were not. In doing so, please explain how the cause and origin of the Weiss loss differed from the cause and origin of the Dekmel and Schutte losses.

12                                                                73894

## ANSWER TO INTERROGATORY NO. 14:

In addition to the Objections Applicable to each request, Allstate objects to the Interrogatory as vague, ambiguous, overly broad, unduly burdensome and seeking confidential private information pertaining to persons not a party to this lawsuit which information is irrelevant and not reasonably calculated to lead to the discovery of admissible information. Additionally, Allstate objects to the Interrogatory on the basis that it seeks information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

## INTERROGATORY NO. 15:

If you contend that any actions of the Weisses, or anyone acting on their behalf, impeded Allstate's ability to adjust this loss, please explain in detail.

## ANSWER TO INTERROGATORY NO. 15:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 15 as vague, ambiguous and overly broad. Subject to all objections, Allstate states that it is still investigating with respect to the information sought in the interrogatory.

## INTERROGATORY NO. 16:

Please state the number of homeowner's claims opened by Allstate as a result of Hurricane Katrina in Louisiana.

## ANSWER TO INTERROGATORY NO. 16:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatory No. 16 as vague, ambiguous, overly broad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

13                                                                73894

**INTERROGATORY NO. 17:**

Please identify all lawsuits (including case caption), which has been filed against Allstate as a result of claims from Hurricane Katrina thus far. If any claims in Louisiana have gone to verdict or judgment after trial, please specifically designate these cases.

**ANSWER TO INTERROGATORY NO. 17:**

In addition to the Objections Applicable to Each Request, Allstate objects to

Interrogatory No. 17 as vague, ambiguous, overly broad, unduly burdensome, irrelevant and not

reasonably calculated to lead to the discovery of admissible evidence, and on the grounds that the

information sought by Plaintiffs in the interrogatory is available to them in the public records.

**INTERROGATORY NO. 18:**

Are Allstate's homeowner's losses from Hurricane Katrina covered, in any way, by any reinsurers? If so, please identify all the reinsurers and explain to what extent these reinsurers would be responsible for covering any claims made by Allstate homeowner's policyholders.

**ANSWER TO INTERROGATORY NO. 18:**

In addition to the Objections Applicable to Each Request, Allstate objects to

Interrogatory No. 18 as vague, ambiguous, not reasonably calculated to lead to the discovery of

admissible evidence, and seeks confidential proprietary information.

**INTERROGATORY NO. 19:**

Where is the Weiss claims file maintained (kept, possessed) any by whom is it maintained (please provide the name and address for the Allstate employee)? Is there a separate claim file relative to the Weiss claim, which is maintained in Northbrook, Illinois, or anywhere outside of Louisiana? If so, please explain where and why there is more than one claims file. In doing so, please explain whether the maintaining of more than one claims file is routine relative to property damage claims and Hurricane Katrina claims.

**ANSWER TO INTERROGATORY NO. 19:**

In addition to the Objections Applicable to Each Request, Allstate objects to

Interrogatory No. 19 as vague, ambiguous, overly broad, irrelevant, not reasonably calculated to

14                                                                                      73894

lead to the discovery of admissible evidence, and as being compound. Subject to all objections,

Allstate states that it will produce the non-privileged portions of the Weiss claim file.

## INTERROGATORY NO. 20:

Please identify by case caption any lawsuit (in any state) in which Allstate, or any of its counsel, has been sanctioned or reprimanded relative to discovery in Hurricane Katrina cases.

## ANSWER TO INTERROGATORY NO. 20:

In addition to the Objections Applicable to Each Request, Allstate objects to

Interrogatory No. 20 as vague, ambiguous, overly broad, unduly burdensome and not reasonably

calculated to lead to the discovery of admissible evidence, and on the grounds that the

information sought is available to Plaintiffs in the public records.

## INTERROGATORY NO. 21:

Please identify the number of Hurricane Katrina claims on which Allstate has employed Rimkus Consulting Group, Inc.

## ANSWER TO INTERROGATORY NO. 21:

In addition to the Objections Applicable to Each Request, Allstate objects to

Interrogatory No. 21 as vague, ambiguous, overly broad, unduly burdensome and not reasonably

calculated to lead to the discovery of admissible evidence.

## INTERROGATORY NO. 22:

Please explain your understanding of why Rimkus' Gary Bell told Mrs. Weiss, via e-mail, that the engineering report was completed on December 30, 2005, but the report is not dated until February 1, 2006. In doing so, please explain your understand in of any and all revisions made to the Rimkus report, at any time.

## ANSWER TO INTERROGATORY NO. 22:

In addition to the Objections Applicable to Each Request, Allstate objects to

Interrogatory No. 22 as vague, ambiguous, overly broad and not reasonably calculated to lead to

15                    73894

the discovery of admissible evidence. Subject to all exceptions, Allstate states that Rimkus is an independent, third-party contractor; that Allstate is unaware of the contents of any email correspondence between Mrs. Weiss and Gary Bell of Rimkus; and that Allstate can not speak for Rimkus. Additionally, Allstate states that it is not aware of any revisions made to the Rimkus report.

## INTERROGATORY NO. 23:

Please explain why no Allstate representative was present when the Rimkus engineers inspected the Weiss property.

## ANSWER TO INTERROGATORY NO. 23:

In addition to the Objections Applicable to Each Request, Allstate objects to the interrogatory as vague, ambiguous, overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Subject to all objections, Allstate states that Rimkus is an independent, third-party contractor and that Allstate representatives do not typically attend property inspections by Rimkus or other third-party contractors.

## INTERROGATORY NO. 24:

Please explain your understanding of why the Rimkus engineers, Jim Neva and Tao Xiong, indicated to Dr. and Mrs. Weiss that the majority of their loss was caused by wind damage.

## ANSWER TO INTERROGATORY NO. 24:

In addition to the Objections Applicable to Each Request, Allstate objects to Interrogatories as vague, ambiguous and overly broad. Subject to all objections, Allstate states that Rimkus is an independent, third-party contractor and that Allstate is unaware of any conversation in which Jim Neva and Tao Xiong indicated to Plaintiffs that the majority of their loss was caused by wind damage.

73894

# REQUEST FOR PRODUCTION OF DOCUMENTS

## REQUEST FOR PRODUCTION NO. 1:

Please produce any videotape taken of the Weiss property. This would include any videotape taken by the Weisses' Allstate agent before Hurricane Katrina.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 1:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous and overly broad. Subject to all objections, Allstate that it is not aware of any videotape taken of the Weiss property. Should Allstate discover that such item exists, it will supplement its responses.

## REQUEST FOR PRODUCTION NO. 2:

Please produce copies of any and all documents, including calculations, as to the ALE (Additional Living Expense) portion of the Weiss claim.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 2:

Subject to all objections, Allstate produces the non-privileged portions of the Weiss claim file.

## REQUEST FOR PRODUCTION NO. 3:

Please produce copies of each and every exhibit, real or demonstrative, that Allstate will, or may attempt to, introduce as evidence or attempt to use for other purposes at the trial of this matter.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 3:

In addition to the Objections Applicable to Each Request, Allstate objects to this request as premature and further states that it will produce its exhibit list in accordance with the schedule set by this Court. Subject to all objections, Allstate states that it may introduce any of the attached responsive documents as evidence at this trial. Allstate expressly reserves the right to amend, modify or supplement this response.

17                                                                          73894

## REQUEST FOR PRODUCTION NO. 4:

Please produce copies of any and all correspondence between Allstate and any of its employees, independent adjusters, consultants or anyone else having any involvement in the claims of Dr. and Mrs. Weiss relative to their claims.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 4:

In addition to the Objections Applicable to Each Request, Allstate objects to the Request as vague, ambiguous, overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and seeking documents protected by the attorney-client privilege or work-product doctrine. Subject to all objections, Allstate produces the non-privileged portions of the Weiss claim file.

## REQUEST FOR PRODUCTION NO. 5:

Please produce copies of any and all memoranda, manuals, bulletins, instructions and/or documents which memorialize, identify, inform and/or advise employees and/or agent of Allstate on how to handle, adjust or otherwise address a property damage claim.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 5:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous, overly broad and unlikely to lead to the discovery of admissible information. Allstate also objects to the request to the extent that information protected by the attorney-client privilege and/or the work product privilege is sought. Finally, Allstate objects to the request on the basis that it seeks documents containing proprietary and confidential information and/or trade secrets. Subject to all objections, Allstate will produce non-privileged portions of the claims file and the Pilot Operations Manual, upon entry of an appropriate protective order.

## REQUEST FOR PRODUCTION NO. 6:

Please produce the entirety of *general files* maintained by Allstate relative to losses from Hurricane Katrina. In other words, plaintiff is requesting the production of any and

18                                                        73894

all files that are maintained by Allstate resulting from Hurricane Katrina, but which files are not specific to the claims of any of Allstate's insureds.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 6:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Allstate also objects to the request on the basis that the terms "general files," "losses," "resulting," and "specific," making it difficult, if not impossible, for Allstate to respond.

## REQUEST FOR PRODUCTION NO. 7:

Produce any and all computer entries (diaries, logs, file notes, etc.) maintained by any Allstate employee (including independent adjusters) from the inception of this claim, which are related to this claim. This includes all computer entries made by any employee of Allstate, even if these individuals have not been identified in your Answer to Interrogatory number 4.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 7:

In addition to the Objections Applicable to Each Request, Allstate objects to Request No. 7 as vague, ambiguous, overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and seeking documents protected by attorney-client privilege and work-product doctrines. Subject to all exceptions, Allstate produces the non-privileged portions of the Weiss claim file.

## REQUEST FOR PRODUCTION NO. 8:

Produce any and all worksheets, handwritten notes and/or e-mails contained in the file. This request is meant to include all portions of the file which are not part of the "claims diary" or "claims log."

19                                                                73894

## RESPONSE TO REQUEST FOR PRODUCTION NO. 8:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous and overly broad. Subject to all objections, Allstate produces the non-privileged portions of the Weiss claim file.

## REQUEST FOR PRODUCTION NO. 9:

Produce any and all forms dealing, in any way, with reserves or monetary authority relative to this claim, whether filled out or not.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 9:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous, overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Allstate also objection to the request to the extent that it seeks confidential and/or proprietary information. Finally, Allstate objects to the request to the extent that it seeks information protected by the attorney-client privilege and/or work product privilege.

## REQUEST FOR PRODUCTION NO. 10:

Produce any and all interoffice or intraoffice communications between employees of Allstate or any of its independent adjusters and/or consultants relative to this claim.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 10:

In addition to the Objections Applicable to Each Request, Allstate objects to the Request as vague, ambiguous, overly broad, and seeks information protected by the attorney-client privilege and work-product doctrines. Allstate further objects on the grounds that the term "communications" is not defined. Subject to all objections, Allstate produces the non-privileged portions of the Weiss claim file.

20

## REQUEST FOR PRODUCTION NO. 11:

Produce any and all correspondences between Allstate and Rimkus, or any other outside company, including any expert *consulted*, relative to this claim; this request includes correspondence from counsel to experts and from experts to counsel.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 11:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous and overly broad, and on the grounds that "correspondences" and "consulted" are not defined, making it difficult for Allstate to respond. Additionally, Allstate objects to the request to the extent that it seeks information protected by the attorney-client privilege and/or the work product privilege or beyond the scope of discovery. Finally, Allstate objects to the request to the extent that it seeks privileged and confidential information and/or trade secrets. Subject to all objections, Allstate will produce correspondence between Allstate and Rimkus relative to Rimkus' inspection of the Plaintiffs' property.

## REQUEST FOR PRODUCTION NO. 12:

Produce any communications, or documentation thereof, between Allstate and *any* individual, other than the Weisses or their counsel, relative to this claim.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 12:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous and overly broad and unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence and on the grounds that "communications" is not defined, making it difficult for Allstate to respond. Subject to all objections, Allstate produces the non-privileged portions of the Weiss claim file.

## REQUEST FOR PRODUCTION NO. 13:

Produce any and all investigatory documents prepared by, or on behalf of, Allstate regarding any aspect of this claim. This request includes any investigation conducted into

plaintiffs' backgrounds (including but not limited to: insurance index bureaus, investigation reports, criminal records checks, traffic checks, credit checks and/or courthouse records checks).

## RESPONSE TO REQUEST FOR PRODUCTION NO. 13:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous, overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and on the grounds that the term "investigatory" is not defined, making it difficult for Allstate to respond. Allstate also objects to the request to the extent that it seeks information protected by the attorney-client privilege and/or work product privilege. Finally, Allstate objects to the request to the extent that it seeks confidential and proprietary information and/or information that constitute trade secrets. Subject to all objections, Allstate produces the non-privileged portions of the Weiss claim file.

## REQUEST FOR PRODUCTION NO. 14:

Produce any and all communications with any *retained/testifying* expert relative to plaintiff's claim.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 14:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as premature and further states that it has not determined which experts will testify at trial. Allstate further objects to the extent that the request seeks correspondence with "retained" experts that is protected by the attorney-client privilege and/or work product privilege.

## REQUEST FOR PRODUCTION NO. 15:

Produce any and all drafts or checks made out for any costs relative to this claim(s).

22                                                                          73894

## RESPONSE TO REQUEST FOR PRODUCTION NO. 15:

In addition to the Objections Applicable to Each Request, Allstate objects to the

request on the grounds that Plaintiff should have access to the information sought. Subject to all

objections, Allstate produces the non-privileged portions of the Weiss claim file.

## REQUEST FOR PRODUCTION NO. 16:

Produce the index to the claims file or a designation of sections to the claims file
as maintained by Allstate.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 16:

Subject to all objections, Allstate states that, to the best of its knowledge, an index

to the Weiss claim file does not exist.

## REQUEST FOR PRODUCTION NO. 17:

Produce copies of any and all Judgments or Orders (whether final or not)
referenced in Interrogatory number 20.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 17:

In addition to the Objections Applicable to Each Request, Allstate objects to the

request as vague, ambiguous, overly broad unduly, burdensome and not reasonably calculated to

lead to the discovery of admissible evidence, and on the grounds that the information sought by

Plaintiffs is available in the public records.

## REQUEST FOR PRODUCTION NO. 18:

Notwithstanding any expert reports which are subject to the Court ordered
deadlines, please produce copies of any documents generated by any consulting expert or
testifying expert.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 18:

In addition to the Objections Applicable to Each Request, Allstate objects to the

request as premature, and seeks information beyond the scope of discovery. Allstate also objects

73894

to the request to the extent that it seeks information protected by the attorney-client privilege and/or the work product privilege. Subject to all objections, Allstate produces the non-privileged portions of the Weiss claim file, which contains a copy of the Rimkus engineering report.

## REQUEST FOR PRODUCTION NO. 19:

Please produce copies of any and all photographs in the possession of Allstate, its experts/consultants, or anyone it has employed relative to the Weiss claim.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 19:

Subject to all objections, Allstate refers Plaintiffs to the claims file. To the extent that Plaintiffs seek color copies of the requested photographs, Allstate asserts that it will amend its responses when such copies become available for production.

## REQUEST FOR PRODUCTION NO. 20:

Please produce copies of any and all documents in Allstate's claims file relative to the Weiss claim, which has not been specifically identified herein.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 20:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous overly broad and unduly burdensome. Allstate also objects to the request to the extent that it seeks information protected by the attorney-client privilege and/or work product privilege. Subject to all objections, Allstate produces the non-privileged portions of the Weiss claim file.

## REQUEST FOR PRODUCTION NO. 21:

Please produce copies of any and all communications, grievances or complaints that have been provided to Allstate by the Louisiana Department of Insurance and/or the Louisiana Insurance Commissioner, and if any, Allstate's responses, specifically dealing with the issue of Allstate paying one of its insureds in an particular geographical area full homeowner's limits, but then asserting that another insured in that same area incurred the majority of his/her damages from flood.

73894

## RESPONSE TO REQUEST FOR PRODUCTION NO. 21:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous, overly broad, unduly burdensome, and seeks confidential personal information pertaining to persons not a party to this suit, which information is not reasonably calculated to lead to the discovery of admissible evidence and may be subject and/or protected by privacy statutes and/or regulations.

## REQUEST FOR PRODUCTION NO. 22:

Please produce the entire claims file relative to the claim of William Dekemel.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 22:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Allstate objects to the request on the basis that it seeks confidential private information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

## REQUEST FOR PRODUCTION NO. 23:

Please produce a copy of the entire claims file relative to the claim of John Schutte, M.D.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 23:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Allstate objects to the request on the basis that it seeks confidential private information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

73894

## REQUEST FOR PRODUCTION NO. 24:

Please produce copies of any and all damage estimates (whether complete or incomplete) or reports relative to the Weiss claim.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 24:

In addition to the Objections Applicable to Each Request, Allstate objects to the

request as vague, ambiguous, overly broad and unduly burdensome. Subject to all objections,

Allstate produces the non-privileged portions of the Weiss claim file.

## REQUEST FOR ADMISSIONS

*(If Allstate denies any Request, please give a detailed explanation as to why.*

## REQUEST FOR ADMISSION NO. 1:

Please admit that Allstate never has made a written offer to settle the Weisses' homeowner's claim.

## ANSWER TO REQUEST FOR ADMISSION NO. 1:

In addition to the Objections Applicable to Each Request, Allstate objects to the

request as vague, ambiguous and unlikely to lead to the discovery of admissible evidence.

Subject to all objections, Allstate denies the request.

## REQUEST FOR ADMISSION NO. 2:

Please admit that no representative of Allstate inspected the Weisses' property within 30 days of Allstate's being notified of the claim.

## ANSWER TO REQUEST FOR ADMISSION NO. 2:

In addition to the Objections Applicable to Each Request, Allstate objects to the

request as vague, ambiguous and not reasonably calculated to lead to the discovery of admissible

evidence. Subject to all objections, Allstate admits only that Allstate inspected the Weiss

property in October of 2005. Allstate otherwise denies the request.

26                                                                    73894

## REQUEST FOR ADMISSION NO. 3:

Please admit that Allstate had some doubt as to the extent of wind damage as the cause and origin of the Weisses' loss.

## ANSWER TO REQUEST FOR ADMISSION NO. 3:

In addition to the Objections Applicable to Each Request, Allstate objects to the

request as vague and ambiguous, as the terms "some doubt" and "Weisses' loss" are not defined.

Allstate further objects to this request on the basis that it is not temporally limited.

## REQUEST FOR ADMISSION NO. 4:

Please admit that Allstate is aware of no specific facts to support the specific amounts of structural damage paid to the Weisses under their homeowner's policy (for example, Allstate has no knowledge of how, or to what extent, the Weisses' roof was damaged).

## ANSWER TO REQUEST FOR ADMISSION NO. 4:

In addition to the Objections Applicable to Each Request, Allstate objects to the

request as vague and ambiguous. Subject to all objections, Allstate denies the request.

## REQUEST FOR ADMISSION NO. 5:

Please admit that Allstate has no information to suggest that the Weiss home was not completely demolished by wind *before* any storm surge from Lake Pontchartrain arrived on Treasure Isle.

## ANSWER TO REQUEST FOR ADMISSION NO. 5:

In addition to the Objections Applicable to Each Request, Allstate objects to the

request as vague and ambiguous. Subject to all objections, Allstate denies the request.

## REQUEST FOR ADMISSION NO. 6:

Please admit that Allstate is aware that Rimkus Consulting Group, Inc. has been accused of falsifying and/or forging names on reports relative to Hurricane Katrina claims.

## ANSWER TO REQUEST FOR ADMISSION NO. 6:

In addition to the Objections Applicable to Each Request, Allstate objects to the

request on the basis that it is overly burdensome, vague and ambiguous. Allstate further objects

73894

to this request to admit on the basis that it is overly broad in that it is not limited to Louisiana Hurricane Katrina claims. Finally, Allstate objects to this request to admit on the basis that it is not reasonably calculated to lead to the discovery of admissible evidence, as there are no allegations in the present lawsuit that Rimkus falsified or forged any names on reports relating to Plaintiffs' homeowner's claim for damage allegedly caused by Hurricane Katrina.

## REQUEST FOR ADMISSION NO. 7:

Please admit that Allstate is aware that Rimkus changed its report and altered its findings relative to the Weiss claim.

## ANSWER TO REQUEST FOR ADMISSION NO. 7:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague, ambiguous and unlikely to lead to the discovery of admissible evidence. Subject to all objections, Allstate denies the request.

## REQUEST FOR ADMISSION NO. 8:

Please admit that William and Bonnie Dekemel were paid their full homeowner's policy limits by Allstate Insurance Company.

## ANSWER TO REQUEST FOR ADMISSION NO. 8

In addition to the Objections Applicable to Each Request, Allstate objects to the request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Allstate objects to the request on the basis that it seeks confidential private information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

## REQUEST FOR ADMISSION NO. 9:

Please admit that John Schutte, M.D. and Mary Schutte were paid their full homeowners' policy limits by Allstate Insurance Company.

28                                                                                      73894

## ANSWER TO REQUEST FOR ADMISSION NO. 9:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Allstate objects to the request on the basis that it seeks confidential private information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

## REQUEST FOR ADMISSION NO. 10:

Please admit that Glenn and Beverly Gaethe were paid their full homeowner's policy limits by Allstate Insurance Company.

## ANSWER TO REQUEST FOR ADMISSION NO. 10:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Allstate objects to the request on the basis that it seeks confidential private information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

## REQUEST FOR ADMISSION NO. 11:

Please admit that Lee and Peggy Nugent were paid their full homeowner's policy limits by Allstate Insurance Company.

## ANSWER TO REQUEST FOR ADMISSION NO. 11:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Allstate objects to the request on the basis that it seeks confidential private information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

73894

## REQUEST FOR ADMISSION NO. 12:

Please admit that Harry and Lisette Verlander were paid their full homeowner's policy limits by Allstate Insurance Company.

## ANSWER TO REQUEST FOR ADMISSION NO. 12:

In addition to the Objections Applicable to Each Request, Allstate objects to the request vague, ambiguous and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Allstate objects to the request on the basis that it seeks confidential private information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

## REQUEST FOR ADMISSION NO. 13:

Please admit that Bryan Eichorn was paid his full homeowner's policy limits by Allstate Insurance Company.

## ANSWER TO REQUEST FOR ADMISSION NO. 13:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Allstate objects to the request on the basis that it seeks confidential private information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

## REQUEST FOR ADMISSION NO. 14:

Please admit that Guy and Margie Smith were paid their full homeowner's policy limits by Allstate Insurance Company.

## ANSWER TO REQUEST FOR ADMISSION NO. 14:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Allstate objects to the request on the basis that it seeks

73894

confidential private information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

## REQUEST FOR ADMISSION NO. 15:

Please admit that Frank and Mary Ferguson were paid their full homeowner's policy limits by Allstate Insurance Company.

## ANSWER TO REQUEST FOR ADMISSION NO. 15:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as overly broad, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Allstate objects to the request on the basis that it seeks confidential private information relating to non-party insureds that may be subject to and/or protected by various privacy statutes and/or regulations.

## REQUEST FOR ADMISSION NO. 16:

Please admit that it is Allstate's position that the extent of damage due to wind could not be determined relative to the Weiss claim.

## ANSWER TO REQUEST FOR ADMISSION NO. 16:

In addition to the Objections Applicable to Each Request, Allstate objects to the request as vague and ambiguous. Subject to all objections, Allstate denies the request.

Respectfully submitted,

Judy Y. Barrasso, 2814
Laura Spansel Gravener, 30148
BARRASSO USDIN KUPPERMAN
 FREEMAN & SARVER, L.L.C.
LL&E Tower, Suite 1800
909 Poydras Street
New Orleans, Louisiana 70112
Telephone: (504) 589-9700

Attorneys for Allstate Insurance Company

31                                                          73894

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Response to Plaintiffs' Interrogatories, Request for Production of Documents and Request for Admissions has been served upon all counsel of record by hand, by facsimile and/or by placing same in the United States Mail, postage prepaid and properly addressed this 16th day of January, 2007.

73894

## *WEISS V. ALLSTATE*
## PRIVILEGE/OBJECTION LOG

| Bates Nos. | Date | Author | Recipient | Type Document | Privilege/Objection |
|---|---|---|---|---|---|
| ALST-WEIS 0106 | 09/02/05 | | | Claim Notes (Redacted) | Confidential Proprietary Information; Work Product |
| ALST-WEIS 0104 | 07/13/06 | Kelli Sibigtroth | | Claim Notes (Redacted) | Irrelevant |
| ALST-WEIS 0103 | 06/22/06 | System | | Claim Notes (Redacted) | Irrelevant |
| ALST-WEIS 0102 | 06/19/06 | Aleta Dian Falcon | | Claim Notes (Redacted) | Irrelevant |
| ALST-WEIS 0102 | 06/20/06 | William H. Farris | | Claim Notes (Redacted) | Irrelevant |
| ALST-WEIS 0094 | 04/30/06 | William T. Clark | | Claim Notes (Redacted) | Confidential Proprietary Information; Work Product |
| ALST-WEIS 0093 | 04/30/06 | William T. Clark | | Claim Notes (Redacted) | Attorney-Client; Work Product |
| ALST-WEIS 0078 | 02/13/06 | Aleta Dian Falcon | | Claim Notes (Redacted) | Irrelevant |
| ALST-WEIS 0078 | 02/14/06 | Keisha M. Sneed | | Claim Notes (Redacted) | Irrelevant |
| Unnumbered | 02/14/06 | Pilot | Allstate | Invoice | Irrelevant |
| Unnumbered | 01/29/06 | Pilot | Allstate | Invoice | Irrelevant |
| Unnumbered | 01/31/06 | Rimkus Consulting | Allstate | Invoice | Irrelevant |
| Unnumbered | 02/14/06 | Pilot | Allstate | Invoice | Irrelevant |
| Unnumbered | 02/13/06 | Allstate | Rimkus Consulting | Check | Irrelevant |



# Richard C. Trahant

*Attorney at Law*

2908 Hessmer Avenue
Metairie, Louisiana 70002

Telephone: (504) 780-9891

Fax: (504) 780-7741

January 17, 2007

Ms. Laura Spansel Gravener
**Barrasso, Usdin, Kupperman,**          **(Via facsimile 589-9701)**
**Freeman & Sarver**
L L & E Tower
909 Poydras Street
New Orleans, LA 70112

> *Re: Weiss v. Allstate Insurance Company*
> *USDC, E.D. of LA, Case No. 06-3774*
> *Section R., Magistrate 5*

Dear Laura:

I would ask that you please provide deposition dates for Edward Liddy, Michael Wells and Anthony Lozado. Also, I want to set the depositions of Jim Neva, Craig Rogers and Tao Xiong of Rimkus. Please let me know if you have a problem with me contacting the Rimkus individuals directly for the purpose of scheduling their depositions. At this point I intend to videotape the depositions of Mr. Liddy, Mr. Wells and Mr. Rogers.

Once again, I want to stress that our trial date is quickly approaching and that my clients will be vehemently opposed to any attempts by Allstate to continue the April 9, 2007 trial date. Therefore, I would ask that we work together in setting the necessary depositions.

Thanking you in advance for your anticipated cooperation, I remain,

Sincerely,

RICHARD C. TRAHANT

RCT:aot



ROBERT U. WEISS, JR., M.D.
210 CYPRESS LAKES CIRCLE
SLIDELL, LOUISIANA 70458
FEBRUARY 14TH, 2006

IN RE: Claim #5113266679
13 Treasure Isle Road
Slidell, Louisiana 70461

Mr. Edward M. Liddy
Chairman/CEO
2775 Sanders Road
Northbrook, Illinois 60062

Dear Mr. Liddy,

My name is Bob Weiss. I am a physician who has been practicing in Slidell,
Louisiana for 35 years.   Allstate has been my insurer for all my insurance
needs since coming to this area.

As a result of Katrina I suffered a total loss of my home and adjacent
structures on August 29th, 2005. I have been insured by Allstate since my
house was built in 1994. I met with my adjuster, Tommy Temple, on 2/10/06
who presented me with the report from Rimkus Consulting Group,
Incorporated, declaring that my house was destroyed by water damage and not
wind.

There are numerous inaccurancies in the Rimkus report that are factual and
not speculative:

Number One, my home was 17 feet above sea level and not 12 as the report
states;

Number Two, nearby residences were either completely destroyed or severely
damaged and not moderately or lightly damaged as the report states;

Number Three, my support structures are similar to all my neighbors and not



EXHIBIT
E

inferior in any way;

Number Four, at the end of the engineer's examination of November 8th, 2005, Mr. Jim Nevas stated to us that his report would indicate a total loss was due to wind (tornadic activity.)

Number Five, even more puzzling is the fact that my neighbor two doors down (Number 11 Treasure Isle) which was on the ground ,on a slab and not above sea level, which was also insured by Allstate, was determined to have suffered a total loss due to wind. The engineering group who performed that inspection was a company by the name of MACTEC located in Mobile, Alabama, also retained by Allstate. The report number for that residence is Report #6227053258.

I have included pictures of my home before and after the storm, and I have also included two NOAA weather map pictures which show my location in relation to the direct path of the hurricane.

I did not want to make this letter too long, but I would really appreciate it if this claim could be reviewed by one of your trouble-shooters.

Sincerely,


Robert U. Weiss, Jr.

ENCLOSURES

# Richard C. Trahant

*Attorney at Law*

2908 Hessmer Avenue
Metairie, Louisiana 70002

Telephone: (504) 780-9891

February 6, 2007

Fax: (504) 780-7741

Ms. Laura Spansel Gravener
**Barrasso, Usdin, Kupperman,**
**Freeman & Sarver**
L L & E Tower
909 Poydras Street
New Orleans, LA 70112

(Via facsimile 589-9701)

*Re: Weiss v. Allstate Insurance Company*
*USDC, E.D. of LA, Case No. 06-3774*
*Section R., Magistrate 5*

Dear Laura:

Consistent with my recent e-mails and our telephone conversations, I must again document the discovery problems I am encountering in this case. When I spoke to you and Judy on February 1, 2007, I was assured that I would receive Allstate's supplemental discovery responses by February 5, 2007. This did not happen and it still has not happened.

Next, I am having an extremely difficult time scheduling the depositions of Mike Wells and Craig Rodgers. I have been told that I am required to schedule their depositions through out of state attorneys. I spoke to the attorney for Pilot, Bill Tidwell, but he still has not gotten the "final word" on producing Mr. Wells. With regard to Mr. Rodgers, I left a message for attorney David Ward, as you instructed me to do, on February 2, 2007. Mr. Ward has not seen fit to return my call.

As you are aware, I am waiting to file my motion to compel so that I know exactly what issues we need to address with Magistrate Chasez. All of this is transpiring with a quickly approaching trial date, which I have told you repeatedly I do not want to lose.

I would ask that you please provide me with responses on all of these issues as soon as possible. Thanking you in advance for your anticipated cooperation, I remain,

Sincerely,

RICHARD C. TRAHANT

RCT:aot



# Richard C. Trahant
*Attorney at Law*

2908 Hessmer Avenue
Metairie, Louisiana 70002

Corporate Litigation

MAY 1 6 2006

Received

Telephone: (504) 780-9891

May 9, 2006

Fax: (504) 780-7741

Edward M. Liddy
Chairman/CEO
**Allstate Insurance Company**
2775 Sanders Road
Northbrook, Illinois, 60062

**(Via certified mail, R.R.R.)**

> *Re: Claimants: Dr. and Mrs. Robert U. Weiss, Jr.*
> *Claim # 5113266679*

Dear Mr. Liddy:

Dr. Robert U. Weiss, Jr. and his wife, Merryl Weiss, have retained me to represent them relative to their homeowner's insurance claim resulting from Hurricane Katrina. Please consider this correspondence a demand for the Weiss' remaining policy limits pursuant to LSA-R.S. 22:658, 22:1220 and *McDill v. Utica Mutual Insurance Company*, 475 So.2d 1085 (La. 1985).

As Allstate has been aware for approximately eight months, the Weiss home located at 13 Treasure Isle Road in Slidell, Louisiana was completely demolished as a result of Katrina. There is virtually nothing left where this house used to stand, except for a concrete slab.

Based on the information provided to me by Dr. and Mrs. Weiss, it is my appreciation that Allstate has paid the following amounts under their homeowner's policy:

| | |
|---|---|
| **Structural Damage on Main Residence** | **$29,483.87** |
| **Structural Damage to "Other Structures" (Boathouse)** | **$0.00** |
| **Contents** | **$0.00** |
| **ALE** | **$10,885.72** |

With respect to the structural damage paid on the main house, this amount seems to be based on some arbitrary calculation of wind damage that was ascribed to the property by Allstate, but which cannot be rooted in fact. In other words this subjective amount, based purportedly on wind damage, is not based on what actually served to destroy this structure.

It is my understanding that Allstate is relying solely on the report prepared by Rimkus Consulting Group, Inc. regarding the "cause and origin" of the destruction of the insured premises. Suffice it to say that this report is flawed in a number of respects. Additionally, there are some curious circumstances surrounding the inspection of the Weiss property and the completion of the Rimkus report.

**ALST-WEIS 0126**

The ultimate conclusion of the Rimkus report appears to be: "The complete destruction and removal of debris was consistent with the result of damages due to storm surge." (See Rimkus report at page 3). However, this report is internally inconsistent because the engineers repeatedly make statements such as, "[t]he extent of damage due to wind could not be determined." (See Rimkus report at page 4). Also, Allstate has paid the Weisses for *some* wind damage.

Certain verbal statements made to both Dr. Weiss and Mrs. Weiss by the Rimkus engineers belie the ultimate conclusion of the report. Additionally, to the knowledge of Dr. and Mrs. Weiss, Craig D. Rogers, the Rimkus engineer who signed and stamped the report, never personally inspected the property. Moreover, Dr. Weiss unsuccessfully attempted to speak with Jim Neva of Rimkus on numerous occasions. When Mr. Neva refused to return Dr. Weiss' telephone calls, Dr. Weiss became adamant that he be given some explanation. A young lady at Rimkus then told him that Rimkus had rendered its report, that "the file is closed" and that Dr. Weiss would have to address his concerns to Allstate. As I am sure you also are aware, Rimkus has been sued in Mississippi relative to the veracity of its reports on "cause and origin."

Based on more objective data and several opinions to be referenced herein, the much more likely **primary** cause of the Weiss loss was high velocity winds. But prior to considering this data, even if the extent of the wind damage never could be determined, Allstate has an obligation under Louisiana law to cover this loss pursuant to the Weiss homeowner's policy.

It is axiomatic that any ambiguity generated by an insurance contract must be construed against the insurer and in favor of coverage. La. Civ. Code art. 2057; *Garcia v. St. Bernard Parish School Board* 576 So.2d 975 (La. 1991). Under Louisiana law, insurance clauses are to be interpreted to provide coverage, not to deny it, and any ambiguity must be resolved in favor of coverage. *Yount v. Maisano*, 627 So.2d 148, 151 (La.1993); *Triple E Transport v. Certain Underwriters at Lloyds*, 691 So.2d 241 (La.App. 4th Cir.1997).

Certainly, the monumental ambiguity, as framed by Rimkus, is whether the destruction of the Weiss property was caused by wind, flooding **or both**. Rimkus essentially concedes that based on its inspection and data, or lack thereof, it is impossible to determine the extent of the damage caused by the high-speed winds of Hurricane Katrina.

Even assuming *arguendo* this to be the case, Allstate should give the benefit of the doubt to its premium-paying policyholder on a first-party claim. Louisiana Revised Statute 22:1220(A) requires a duty of "good faith and fair dealing."

### Evidence of Destruction from Wind

Instead of relying on weather data and accepted principles of engineering, the Rimkus report seems result-oriented in the sense that the Rimkus engineers knew it would be in Allstate's best interests to find that the primary cause of the loss was storm surge, as opposed to wind.

ALST-WEIS 0127

The evidence collected by Dr. and Mrs. Weiss is far more comprehensive than the data upon which Rimkus relied. Specifically, once Allstate retained Rimkus and Rimkus rendered an opinion favorable to Allstate and unfavorable to the Weisses, they were forced to hire an engineer of their own. Unlike Allstate and Rimkus, Dr. and Mrs. Weiss had no prior financial relationship with the Louisiana-based engineers they hired, Quick & Associates, Inc.

Quick & Associates concluded that tornadic activity damaged the structure long before the waters ever began to rise. (See Quick report attached hereto as Exhibit 1). In addition to collecting its own forensic data, the Quick report relied on a thorough weather analysis prepared by Accuweather, Inc. (See Accuweather report attached hereto as Exhibit 2). The Accuweather report establishes that tornadic wind forces would have caused catastrophic damage to the structures on Treasure Isle well before the storm surge arrived. I also enclose an engineering report on a neighboring property owned by Mr. and Mrs. Richard Kelley located at 15 Treasure Isle Road. Much like the Quick report and the Accuweather report, the report of Damon Engineering, Inc. contradicts the Rimkus report. (See Damon report attached hereto as Exhibit 3).

These reports are self-explanatory and employ a much more scientific methodology, in terms of establishing the probability of "cause and origin," than the Rimkus report.

### *The Claim of William J. Dekemel*

William J. Dekemel is an Allstate insured whose property located at 11 Treasure Isle Road was completely destroyed by Katrina. Allstate paid Mr. Dekemel the limits of his homeowner's policy. It is impossible that a force of nature, different from that which destroyed the Dekemel property, destroyed the Weiss property.

Allstate now has taken a completely contradictory position as it pertains to the "cause and origin" of the losses on the Dekemel and Weiss properties. Allstate's taking of such contradictory positions seems to define the term "arbitrary and capricious."

With respect to the different manner in which Allstate has determined the cause and origin of the Dekemel claim, as opposed to the Weiss claim, I direct Allstate's attention to LSA-R.S. 22:652. Allstate cannot maintain both positions in good faith.

### § 652. Discrimination prohibited

*No insurer shall make or permit any unfair discrimination in favor of particular individuals or persons, or between insureds or subjects of insurance having **substantially like insuring risk**, and exposure factors, or expense elements, in the terms or conditions of any insurance contract, or in the rate or amount of premium charged therefor, or **in the benefits payable** or in any other rights or privileges accruing thereunder. This provision shall not prohibit fair discrimination by a life insurer as between individuals having unequal life expectancies.* (Emphasis added).

ALST-WEIS 0128

Allstate's conduct in this instance is far less than consistent, and Mr. Dekemel is willing to execute an affidavit or testify, if litigation ensues. Based on Allstate's payment of the Dekemel claim alone, a declaratory judgment action might be appropriate.

### Louisiana's Valued Policy Law

Louisiana's Valued Policy Law has been the subject of much recent debate and litigation. LSA-R.S. 22:695 applies to homeowner's losses, other than only fire losses. And although its complete application has yet to be resolved, in light of the State of Florida's *Mierzwa* decision, it cannot be disputed that under this statute, the insurer owes the face value of the policy in the event of a total loss.

### § 695. Valued policy clause; exceptions

*A. Under any fire insurance policy insuring inanimate, immovable property in this state, if the insurer places a valuation upon the covered property and uses such valuation for purposes of determining the premium charge to be made under the policy, in the case of total loss the insurer shall compute and indemnify or compensate any covered loss of, or damage to, such property which occurs during the term of the policy at such valuation without deduction or offset, unless a different method is to be used in the computation of loss, in which latter case, the policy, and any application therefor, shall set forth in type of equal size, the actual method of such loss computation by the insurer. Coverage may be voided under said contract in the event of criminal fault on the part of the insured or the assigns of the insured.*

Taking into account the amounts Allstate has paid under the Weiss homeowner's policy, I demand the following on their behalf:

| | |
|---|---|
| **Structural Damage on Main Residence** | **$320,516.13** |
| **Structural Damage to "Other Structures" (Boathouse)** | **$34,000.00** |
| **Contents** | **$240,000.00** |

In the spirit of compromise, and solely for the purpose of this settlement offer, Dr. and Mrs. Weiss are willing to waive any additional claims for ALE at this time. Of course, if we are forced to file suit, we reserve the right to claim additional ALE.

It is difficult to imagine the patience required and the frustration that has been endured by my clients in attempting to resolve this claim over the past 8 months. They are longtime Allstate insureds, but they feel that Allstate immediately took an adverse position in an attempt to limit coverage, rather than to try and make them whole.

ALST-WEIS 0129

Based on all of the data and reports enclosed herewith, it is clear that the Weiss home was destroyed and carried away by a combination of wind and water. However, it cannot be disputed that the tornadic winds did catastrophic damage to the Weiss structure *before* the water ever rose. It seems logical that the storm surge then carried away what was left of the Weiss home.

I look forward to receiving checks in the referenced amounts within 30 days of your receipt of this correspondence. Thank you in advance for your anticipated cooperation.

Sincerely,

RICHARD C. TRAHANT

RCT
Enclosures

## Richard Trahant

**From:** "Laura S. Gravener" <lgravener@barrasousdin.com>
**To:** "Richard Trahant" <trahant@networktel.net>
**Sent:** Wednesday, January 31, 2007 3:25 PM
**Subject:** RE: Weiss v. Allstate

Rick,

As I told you yesterday, you'll have to contact Rimkus directly to set up their depositions. As for the privileged documents, I have been advised that we are not required to produce the documents to the magistrate unless their is a motion pending relative to the documents. As for the person maintaining the file, Anthony is the guy ... I don't know what else to tell you. You're welcome to depose him. Finally, I don't understand your comment about the trail of written correspondence and you're seeking discovery ... are you insinuating that we're not entitled to depose your clients? We are trying to accommodate you with your discovery requests. There are many layers of people to go through to get information, and your requests were numerous. And, we are within the discovery deadlines. Again, please provide me available dates to depose your clients, and please confirm that you received the written discovery that was sent. Thanks.
-Laura

**From:** Richard Trahant [mailto:trahant@networktel.net]
**Sent:** Wednesday, January 31, 2007 3:06 PM
**To:** Laura S. Gravener
**Cc:** Jack E. Morris
**Subject:** Re: Weiss v. Allstate

Laura:

So let me get this straight; you cannot produce a single witness for a deposition in this case. I have your expert, Craig Rodgers' (Rimkus) phone number. Should I go ahead and contact him directly?

You still have not given me an answer relative to the privilege log and the so-called "privileged" documents.

I will issue a supoena for Liddy. I believe you about Lozado, but I do not believe for a second there is not an Allstate rep maintaining a file.

Finally, the trail of written correspondences clearly will establish that I have sought discovery from you, including depos, long before you ever mentioned deposing my clients.

Rick

----- Original Message -----
**From:** Laura S. Gravener
**To:** Richard Trahant
**Sent:** Wednesday, January 31, 2007 2:36 PM
**Subject:** RE: Weiss v. Allstate



Rick, Anthony is the file handler on the Weiss claim. The file handler are also contracted out through Pilot. Anthony currently maintains the file. I can't file the Liddy motion until you notice his deposition. Certainly, thereafter I'll file a motion and set it for a contradictory hearing. We do not represent Pilot. I understand that local counsel was appointed to represent Pilot today and will forward you that firm's information as soon as I'm made aware of it. Finally, please find attached Allstate's discovery requests, which I am also mailing to you today; please also advise me of available dates to take the depositions of your clients, so I can notice the depositions. Thanks.

**From:** Richard Trahant [mailto:trahant@networktel.net]
**Sent:** Tuesday, January 30, 2007 5:32 PM
**To:** Laura S. Gravener
**Subject:** Re: Weiss v. Allstate

This is confusing. Is there a claims handler for Allstate? It feels like I am trying to find the pea under the right shell. Allstate is the defendant in this litigation. Who maintains the file for Allstate? I am sure I am going to be told it is a lawyer, and then Allstate will claim privilege. Speaking of, have the documents and privilege log been sent to Magistrate Chasez?

Please make sure you set the Liddy motion for a contradictory hearing.

The one question I would like answered is whether you represent Pilot. If the answer is no, then I will locate Wells and the others. Thanks.

Rick

----- Original Message -----

**From:** Laura S. Gravener
**To:** Richard Trahant
**Sent:** Tuesday, January 30, 2007 5:18 PM
**Subject:** RE: Weiss v. Allstate

Rick, we will file the motion for a protective order on Liddy. As for Anthony Lozado, he is not an Allstate rep. He works for Pilot also. He should be providing me with available deposition dates tomorrow, but it will have to take place in Lake Mary, FL, where he lives. I am waiting on contact info. for Michael Wells. As for the Rimkus employees, or ex-employees, go ahead and set up the depositions with Rimkus and/or the ex-employees directly, as we do not represent them.

**From:** Richard Trahant [mailto:trahant@networktel.net]
**Sent:** Tuesday, January 30, 2007 2:29 PM
**To:** Laura S. Gravener
**Subject:** Re: Weiss v. Allstate

The answers are as follows:

1) Dr. Weiss wrote a letter directly to Mr. Liddy, and I sent the *McDill* demand to Mr. Liddy. If Allstate refuses to
   produce him, please file a protective order and set it for a contradictory hearing. If Mr. Liddy is so far removed from answering, or even reading his own mail, I would like to know that.

2) Anthony Lozado is the current claims handler. We have asserted a bad faith claim. Undoubtedly, I have the right to depose him. Also, I would assume that he is going to be Allstate's representative. Please let me know if someone else would be produced in repsonse to a 30(b)(6) corporate depo request.

3) If I have to locate and contact the Pilot adjusters, I will. But, we have wasted a lot of time with me waiting for Allstate to give me answers to simple questions to which they already should know the answers.

    Thanks again.

                                       Rick

----- Original Message -----

**From:** Laura S. Gravener
**To:** Richard Trahant
**Sent:** Tuesday, January 30, 2007 11:59 AM
**Subject:** RE: Weiss v. Allstate

Rick,
    Please explain why you would like to depose Edward Liddy. We do not feel that deposing him is appropriate. As for Michael Wells, he is employed by Pilot, not Allstate. Allstate does not have contact information for him. As I told you, I have requested contact information for Pilot adjusters. I have not received that yet. As for Jim Neva, Craig Rogers and Tao Xiong, we are not counsel for Rimkus. I believe you will have to go through Rimkus to depose them. Judy is working on getting a definitive answer on that, and I'll touch base with you this afternoon. As for Anthony Lozado, please explain why you would like to depose him, as he was not assigned to this file until after suit was filed. Thanks.
-Laura

**From:** Richard Trahant [mailto:trahant@networktel.net]
**Sent:** Tuesday, January 30, 2007 11:11 AM
**To:** Laura S. Gravener
**Subject:** Re: Weiss v. Allstate

Laura:

    Regarding the e-mail I sent you earlier, discovery cutoff is at the end of February. I really need answers on the depsoition questions ASAP. Thanks.

Rick

----- Original Message -----
**From:** Laura S. Gravener
**To:** Richard Trahant
**Sent:** Monday, January 29, 2007 6:35 PM
**Subject:** RE: Weiss v. Allstate

Rick-
I have discussed our conversation with Judy and with others at Allstate. Based on the layers of people that I need to go through to get information, I can't get you our amended responses until next Monday. I will have them to you then.

**From:** Richard Trahant [mailto:trahant@networktel.net]
**Sent:** Monday, January 29, 2007 12:05 PM
**To:** Laura S. Gravener
**Subject:** Re: Weiss v. Allstate

Laura:

I really would like to have Allstate's responses to what we talked about before I file the Motion to Compel. I feel that I have been patient, especially in light of the quickly approaching trial date. If I do not receive responses by tomorrow, I will file my motion without Allstate's amended responses. We really need to start scheduling some depositions.

Also, if you have not noticed, Witness and Exhibit Lists are due today. Thanks.

Rick Trahant

----- Original Message -----
**From:** Laura S. Gravener
**To:** Richard Trahant
**Sent:** Friday, January 26, 2007 10:40 AM
**Subject:** RE: Weiss v. Allstate

I am trying Rick. I had an 11 hour mediation on Wednesday and had to play catch up with the 60 files I'm handling yesterday. I will get it to you as soon as I can.

**From:** Richard Trahant [mailto:trahant@networktel.net]
**Sent:** Friday, January 26, 2007 7:47 AM
**To:** Laura S. Gravener
**Subject:** Re: Weiss v. Allstate

2/12/2007

Laura:

    I really need your client's response to the issues we discussed on 1-23-07. Time is of the essence. Thanks.

                                                 Rick Trahant

----- Original Message -----
**From:** Laura S. Gravener
**To:** Richard Trahant
**Sent:** Tuesday, January 23, 2007 11:53 AM
**Subject:** RE: Weiss v. Allstate

does 4:00 work? I have a property reinspection in Mandeville at 1:00.

**From:** Richard Trahant [mailto:trahant@networktel.net]
**Sent:** Tuesday, January 23, 2007 11:04 AM
**To:** Laura S. Gravener
**Subject:** Re: Weiss v. Allstate

What time is good after lunch?

----- Original Message -----
**From:** Laura S. Gravener
**To:** Richard Trahant
**Sent:** Tuesday, January 23, 2007 9:58 AM
**Subject:** RE: Weiss v. Allstate

are you available at 11:00?

**From:** Richard Trahant [mailto:trahant@networktel.net]
**Sent:** Tuesday, January 23, 2007 7:25 AM
**To:** Laura S. Gravener
**Subject:** Weiss v. Allstate

Laura:

    Please let me know what time you would like to hold the Rule 37 conference today. Thanks.

                                                 Rick Trahant