UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MERRYL D. WEISS, ET AL.                    CIVIL ACTION

VERSUS                                     NO. 06-3774

ALLSTATE INSURANCE COMPANY                 SECTION: "R"(5)

### RULINGS ON OBJECTIONS TO EXHIBITS, MOTIONS IN LIMINE, AND MOTION TO QUASH TRIAL SUBPOENAS

**I.    PROCEDURAL HISTORY**

This lawsuit involves a dispute between plaintiffs Merryl and Robert Weiss and defendant Allstate, their homeowner's and flood insurer.  Plaintiffs' home, which was located in Slidell, was allegedly rendered a total loss by Hurricane Katrina.  The facts of this lawsuit are set forth in greater detail in *Weiss, et al. v. Allstate Ins. Co.*, 2007 WL 891869 (E.D. La. Mar. 21, 2007).  In connection with the upcoming trial, the parties filed various motions in limine, a motion to quash trial subpoenas, memoranda of law, and objections to exhibits.  The Court rules on these issues as set forth below.

## II.  DEFENDANT'S MOTION TO QUASH TRIAL SUBPOENAS

Allstate moves to quash the trial subpoenas directed to Tommy Temple, Tina Thompson, Tammy Abney, Philip Cagnina, Henry Barnes, Gary Ensey, Jason Morgan, and Jerry Higgins.  On March 20, 2007, plaintiffs served these subpoenas on Allstate's counsel in this matter, not directly on those individuals.  Allstate contends that these subpoenas should be quashed because they were improperly served under Federal Rule of Civil Procedure 45(b), which requires that "[s]ervice of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person." FED. R. CIV. P. 45(b).

The Court finds that each subpoena must be quashed.  Under the plain language of the rule, as well as Fifth Circuit precedent, service is improper if the person himself is not served with a copy of the subpoena. *See Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968).  As plaintiffs concede, this was not done as to these eight individuals.  Moreover, even if the Court accepted, as plaintiffs contend, that these individuals were all agents of Allstate, service of these subpoenas would still not be proper, as service on a party's counsel only "renders such service a nullity." *Id.*  The Court therefore quashes the trial subpoenas as to these eight individuals as they were not served in conformity with the procedures set forth in

Rule 45(b).

**III. PLAINTIFFS' MOTIONS IN LIMINE**

> **A.    Strike Certain Affirmative Defenses**

Plaintiffs filed a motion in limine to strike certain affirmative defenses asserted by Allstate in the Pretrial Order that were not raised in its answer.  The challenged defenses are:

> 25.  Whether by virtue of making a federal flood claim, and receiving and accepting payments of policy limits for dwelling and contents without objection, plaintiffs are judicially estopped from claiming that their home was destroyed by wind or a tornado before the flood waters arrived.

> 26.  Whether plaintiffs' making a federal flood claim and receiving and accepting full policy limits calculated on the basis of their home being a total loss from flood waters constitutes an admission that their home and/or contents were totally destroyed by flood.

> 28.  Whether plaintiffs must repay all or part of the flood insurance proceeds if the jury finds that a tornado caused the total destruction of their home well in advance of the arrival of flood waters.

> 31.  Whether the maximum amount plaintiffs may recover is

3

determined by the cost of their new home at 210 Cypress Lakes Circle, Slidell, Louisiana, minus the land value and minus the flood dwelling payment.

33.   Whether plaintiffs fulfilled their duties under the policy.

39.   Whether the Weisses are entitled to replacement cost for the covered losses for repairs or replacement not made within 180 days of actual cash value payment or not yet made.

Plaintiffs also move to exclude any evidence offered by Allstate at trial in support of these defenses.

The Federal Rules of Civil Procedure require that affirmative defenses be pled:

> Affirmative Defenses.  In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation.

FED. R. CIV. P. 8(c).  The purpose of this requirement is to give plaintiff fair notice of the defense.  *See Woodfield v. Bowman*, 193 F.3d 354, 362 n.29 (5th Cir. 1999) (citing *Automated Med.*

4

*Labs., Inc. v. Armour Pharm. Co.*, 629 F.2d 1118, 1122 (5th Cir. 1980)); *see also Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987) ("defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense."). Failure to plead an affirmative defense generally results in waiver of that defense. *See Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983); *accord Woodfield*, 193 F.3d at 362. Nevertheless, technical failure to comply with Rule 8(c) is not fatal when the matter is raised in a manner that does not subject the plaintiff to unfair surprise. *See Mackay*, 695 F.2d at 855-56 (citing *Jones v. Miles*, 656 F.2d 103, 107 n.7 (5th Cir. 1981)). In addition, Rule 8(f) provides that "[a]ll pleadings shall be so construed as to do substantial justice." In deciding whether defendant has met the fair notice requirement, this Court must determine whether allowing it to assert its policy exclusions as affirmative defenses at this time would result in unfair surprise to the plaintiff. *See Woodfield*, 193 F.3d at 362. This requires a fact-specific inquiry. *See id.*

Here, Allstate first raised the judicial estoppel and admission issues in its motion for summary judgment filed on February 14, 2007, nearly two months before trial. Since that time, plaintiffs filed an opposition memorandum to that summary judgment motion, and the Court denied the motion. At minimum,

5

plaintiffs have been on notice since mid-February that Allstate
intended to raise the estoppel and admission defenses at trial.
In fact, in their motion in limine, they do not assert that they
will be prejudiced or otherwise unfairly surprised by Allstate
raising these defenses.  Therefore, the Court concludes that
plaintiffs were on notice far enough in advance of trial that
Allstate intended to raise these defenses, and thus they are not
waived.  The remaining defenses fall under the defenses asserted
in Allstate's answer or did not have to be pled affirmatively.
Further, plaintiffs do not contend that they are prejudiced or
unfairly surprised by Allstate now raising these defenses.  The
motion in limine is thus denied.

     **B.   Exclude Allstate's Expert Testimony**

     Plaintiffs next move to exclude the testimony of Allstate's
expert witnesses, Craig Rogers and David Mitchell, on the ground
that neither expert produced a report in compliance with Rule 26
of the Federal Rules of Civil Procedure.  The Court does not find
this to be an adequate basis for exclusion of these experts.  The
Court has been indulgent to both sides in this matter as to
missed deadlines, late-filed motions, last-minute defenses, and
the failure to comply with discovery rules.  Moreover, plaintiffs
do not assert that they have been prejudiced by these alleged
Rule 26 violations.  The Court therefore denies this motion in

limine.

## IV.  DEFENDANT'S MOTIONS IN LIMINE

### A.    Evidence Related to Other Katrina Insurance Claims

Allstate moves to exclude any evidence relating to, as well as any reference to, documents or testimony regarding other properties' damages or insurance claims arising from Hurricane Katrina.  The gist of Allstate's argument is that evidence as to what happened at other properties, including what type of damages they sustained and how their claims were handled, is irrelevant as to what happened to plaintiffs' property.  Moreover, Allstate contends that the admission of evidence as to other properties will transform this case into a series of mini-trials about the insurance claims of these other properties, which would be unfairly prejudicial to Allstate, and thus the evidence should be excluded under Rule 403 of the Federal Rules of Evidence.  The Court finds that a blanket exclusion of any evidence relating to other properties is inappropriate in this case because what happened at another property may, given appropriate similarity between the properties, make the existence of a fact as to what happened to plaintiffs' property more probable.  Thus, the Court must make a determination as to the admissibility of the evidence relating to each property that plaintiffs seek to introduce.

7

Specifically, Allstate seeks to bar any evidence as to the
properties of William Dekemel, John Schutte, Lee Nugent, the
Kellys, and Dennis Aucoin.  For the reasons discussed below, the
Court finds that certain evidence as to the Dekemel and Schutte
properties may be admissible, whereas evidence as to the Nugent,
Kelly, and Aucoin properties is inadmissible.  The Court
addresses each of these properties in turn.

> 1.   *Dekemel property*

Allstate moves to exclude evidence as to the damage that
occurred to the property of William Dekemel, which is located at
11 Treasure Isle in Slidell.  Plaintiffs have represented to the
Court that they intend to use evidence as to what happened at the
Dekemel property to show that it was more likely than not that
the same conditions (*i.e.,* hurricane winds having the force of a
tornado) caused the destruction at the Weiss property, despite
seemingly contradictory deposition testimony of their expert
witness, Leonard Quick.  Plaintiffs also seek to use evidence as
to the handling of the Dekemel homeowner's claim to show bad
faith adjustment of the Weiss property on the part of Allstate.
For the Court to find evidence regarding the Dekemel property
relevant, and hence, admissible in this matter, the Dekemel and
Weiss properties must have been of such a similar nature and
situation at the time Katrina struck that evidence as to what

happened at the Dekemel property could be probative of what happened at the Weiss property. After a comparative analysis of the two properties, the Court finds that certain evidence relating to the Dekemel property is relevant in this case.

The Weiss (13 Treasure Isle) and Dekemel (11 Treasure Isle) properties were located 100 feet apart on a narrow peninsula a few hundred feet across that extends into Lake Pontchartrain. Both were insured by Allstate. Both homes faced east and had their back sides near the open waters of Lake Pontchartrain. The other side of each structure faced a bayou. Both homes were two stories before they were destroyed by Hurricane Katrina. Both homes featured a considerable amount of glass in their respective exteriors. Further, the Weiss home was built on a concrete foundation, and the Dekemel home was built on a concrete-reinforced foundation. After Hurricane Katrina struck, Allstate hired different engineering firms to examine the Weiss and Dekemel properties. The firm that reviewed the Dekemel home concluded that, because it faced the direction of the wind force and had extensive glass, it was completely destroyed by wind force from the "frame down to the slab," which was about 7 or 8 feet above sea level. Allstate relied on that engineering report to determine that the property was 100 percent destroyed by wind, and thus paid Dekemel the full limits of his homeowner's policy.

By contrast, the firm that reviewed the Weiss home concluded that it was damaged by wind force to an extent that could not be determined, but that the structure was ultimately destroyed by storm surge, despite the fact that plaintiffs suggest it was built 17 feet above sea level.  Allstate, which adjusted the Weiss claim after the Dekemel claim, relied on this report to determine that flood, not wind, was the primary cause of the destruction to the Weiss property, and thus paid Weiss the maximum amount under his flood policy, but only a fraction of the limits under his homeowner's policy.  In light of these facts, the Court cannot say that the determination as to what happened to a neighboring home with similar characteristics experiencing hurricane-force winds at the same time is irrelevant to the home at issue here.  Both homes were situated on a narrow strip of land between the same bayou and open waters of Lake Pontchartrain.  Both homes had their backs on the same large body of water, and although the evidence is conflicting, were potentially exposed to the same hurricane-force winds just 100 feet apart from one another.

Allstate, however, contends that every structure is unique and that differences in age and quality of construction between these two homes make them irrelevant to one another.  This argument is wide of the mark, as Allstate's own engineering

10

reports make reference to what happened at neighboring structures and areas and sometimes rely on that information to reach their conclusions.  Further, to the extent that the structures are different in construction, the Court does not find that these differences are significant enough to make the Dekemel property completely irrelevant.  Allstate's other arguments as to why evidence on the Dekemel property should be excluded are similarly without merit.  First, the cases on which Allstate relies for the proposition that Katrina claims are highly individualized and vary substantially from one another are those in which courts have rejected class certification for a broad category of Katrina homeowners or severed claims in mass actions brought by Katrina homeowners.  *See Guice v. State Farm Fire & Cas. Co.*, No. 06-0001 (S.D. Miss. Mar. 22, 2007); *Aguilar v. Allstate Ins. Co.*, No. 06-4660 (E.D. La. Mar. 5, 2007); *Vaz v. Allstate Prop. & Cas. Co.*, 2006 WL 2583733 (S.D. Miss. Sept. 6, 2006); *Comer v. Nationwide Mut. Ins. Co.*, 2006 WL 1066645 (S.D. Miss. Feb. 23, 2006).  Those holdings are inapposite to the facts at hand.  The universe of claims and issues as to these properties is limited to a defined geographical area of about 100 feet in width.  Indeed, the Court's determination that these properties were almost identically situated and sufficiently similar in construction was a product of the type of highly individualized inquiry that the

courts in the cases cited by Allstate found impracticable for a large number of claims.  Second, the probative value of this evidence is not substantially outweighed by the danger of unfair prejudice to Allstate because the risk of jury confusion through minitrials of nonparty claims is minimal.  The potentially relevant Dekemel evidence consists essentially of his testimony and the MACTEC report.  Allstate proposes to rebut this testimony with a single additional witness.  This does not involve a trove of files and numerous witnesses, as Allstate initially suggested. Furthermore, the nature of this evidence and Allstate's response to it is not so arcane as to be likely to lead to jury confusion.

In sum, evidence as to what happened at the Dekemel property, because of its similarity to the Weiss property, is a relevant area of inquiry, as it could show that wind was more likely than not the cause of plaintiffs' damage.  It is also relevant as to what Allstate's knowledge when the insurer reached its decision as to what happened 100 feet away at the Weiss property.  Thus, plaintiffs can call William Dekemel as a witness to establish facts about the location and nature of his home and Allstate's handling of his homeowner's claim after Katrina struck.

Provided plaintiffs lay the proper foundation, the MACTEC engineering report on the Dekemel property that was prepared for

Allstate can be admitted into evidence.  Under Rule 801(d)(2)(B), a statement of which Allstate has manifested an adoption or belief in its truth is not hearsay.  "A party may adopt a written statement if the party uses the statement or takes action in compliance with the statement."  5 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence, Second Edition, § 801.31[3][b] (2005).  Thus, plaintiffs can use the MACTEC report if they lay the proper foundation through Dekemel or Allstate that Allstate requested the report and then acted on it to pay Dekemel's claim.  In that situation, the declarant's knowledge of the truth of the report need not be shown.  *Id.*  The report is relevant because of the comparable nature of the Dekemel and Weiss properties, as already discussed.  In addition, the report also has a non-hearsay use as it goes to Allstate's knowledge because it was prepared and submitted to Allstate before plaintiffs were paid on their claim.  For that purpose, it is of no matter whether the contents of the report are true, just that Allstate knew about what was in the report when it adjusted plaintiffs' claim.

> 2.  *Schutte property*

Allstate moves to exclude evidence as to the Schutte property, located at 10 Treasure Isle.  Akin to Dekemel, Schutte was covered by Allstate under a homeowner's policy and was paid

the full limits under his policy after Katrina rendered his
property a total loss.  The Schutte property was about 200 feet
from the Weiss property.  The house was constructed more than 40
years before the Weiss house and was supported by wood piles.
Unlike the Weiss and Dekemel houses, the Schutte house faced west
and its back extended into a bayou, not Lake Pontchartrain, as it
was located on a different side of Treasure Isle.  The Schutte
property is therefore not similar enough to the Weiss property to
make evidence of the destruction to the Schutte property and the
handling of the homeowner's claim relevant and admissible in
general.  However, the Court finds that certain parts of the
Schutte claim file may be admissible for impeachment purposes if
Allstate, through testimony or other evidence, asserts that each
property is so individualized in features as to foreclose
consideration of other properties or that the Dekemel property is
so dissimilar to the Weiss property as to be irrelevant to
Allstate's handling of the Weiss claim.  At that point, entries
in the Claim Activity document located in the Schutte claim file
can be used for impeachment purposes, as those entries suggest
that Allstate considered the Dekemel property comparable enough
to the Schutte property to use it as a reason for concluding that
the Schutte property was likewise totally destroyed by wind.  The
Dekemel property was not significantly more similar to the

14

Schutte property than it was to the Weiss property.  Thus,
plaintiffs may use those statements to impeach any Allstate
witness who suggests that the Dekemel property is so incomparable
to the Weiss property that it is irrelevant to the handling of
the Weiss claim or that other properties should never be or were
not considered in evaluating a claim on a different property.
This is the only permissible use of evidence as to the Schutte
property.  Finally, the Court reserves ruling on whether the
Rimkus report on the Schutte property can be used to impeach
witnesses.  Plaintiffs' counsel is to approach the bench before
using the Rimkus report in that manner.

       3.   *Nugent property*

    Allstate moves to exclude evidence as to the Nugent
property, which is located at 29 Treasure Isle.  Plaintiffs have
failed to lay a foundation of sufficient similarity for the Court
to admit evidence on this claim.  Further, this property is too
far removed in terms of location from the Weiss property for the
Court to conclude that the property is substantially similar
enough to the Weiss property such that the handling of the Nugent
claim is relevant to this matter.  To the extent that this
evidence has any marginal relevance, however, it is substantially
outweighed by the danger of unfair prejudice, jury confusion, and
considerations of delay and needless presentation of cumulative

evidence.  *See* FED. R. EVID. 403.  Thus, the Court excludes
evidence on the Nugent property under Rule 403.

       3.  *Kelly property*

     Allstate moves to exclude evidence as to the Kelly property,
which was located at 15 Treasure Isle.  This property was not
insured by Allstate.  The file materials are unauthenticated
hearsay.  Plaintiffs have not proffered any admissible evidence
that could be used to establish a foundation for the relevance of
this property.  The Court therefore finds that plaintiffs fail to
establish that the damage sustained by the property as well as
the handling of the Kelly claim is relevant as to the contested
issues involved in this case.  Thus, the Court excludes evidence
on the Kelly property under Rules 402, 801, and 901.

       4.  *Aucoin property*

     Allstate moves to exclude evidence as to the Aucoin
property, which was located at Highway 90, Lot 71 in New Orleans.
Plaintiffs failed to lay a foundation for the relevance of this
evidence in terms of the location of the property and the nature
of its construction.  Further, this property was not insured by
Allstate.  The Court therefore finds that the damage sustained by
the property as well as the handling of the Aucoin claim is
irrelevant to the contested issues in this case.  Thus, the Court
excludes evidence on the Aucoin property under Rule 402.

Plaintiffs may use statements in the Rimkus report on this claim for impeachment purposes provided that they are properly impeaching.

       5.   *Shearman property*

Allstate moves to exclude evidence as to the Shearman property.  Specifically, plaintiffs seek to admit a document that purportedly records a statement made by an Allstate representative to Shearman that "I spoke to him about his flood and let him know that that policy stands alone and can not and will not reflect on any decision made on the wind claim." Plaintiffs represented that they do not intend to use this document unless an Allstate witness makes a contrary statement at trial.  The Court reserves ruling on this issue until such time as plaintiffs offer this evidence at trial.  The Shearman claim itself has no relevance to this case.

    **B.    Evidence of Lawsuits Filed Against and Subpoenas Issued to Rimkus Consulting Group and Testimony of Leonard Quick Regarding Allegedly Wrongful Acts of Rimkus Ten Years Ago**

Allstate next moves to exclude any evidence of lawsuits filed against and subpoenas issued to Rimkus, the engineering firm retained by Allstate to evaluate plaintiffs' property. Allstate argues that these unproven allegations have no probative value and are highly prejudicial.  The Court grants Allstate's

motion as to this evidence.  The mere fact that nonparties may
have filed lawsuits against Rimkus, also a nonparty, is
irrelevant to the underlying issues in this case.  Plaintiffs
have not shown the nature of these suits, that any such suit was
successful or that it produced any evidence.  *See Compaq Computer
Corp. v. Ergonome Inc.*, 387 F.3d 403, 408-09 (5th Cir. 2004)
(concluding that district court did not abuse its discretion by
excluding evidence of past lawsuits against defendant because any
probative value was outweighed by its prejudicial and
inflammatory nature and "its tendency to confuse the jury with
tangential litigation"); *Yellow Bayou Plantation, Inc. v. Shell
Chemical, Inc.*, 491 F.2d 1239, 1242-43 (5th Cir. 1974) (upholding
district court's exclusion of list of prior lawsuits against
defendant because evidence was "of such faint probative value and
high potential for unfair prejudice").  This evidence is excluded
under Rule 403 as any probative value it may have is
substantially outweighed by unfair prejudice and considerations
of delay and time-wasting on collateral issues.

Allstate also moves to exclude any testimony of Leonard
Quick, an expert witness for plaintiffs, to the effect that
Rimkus regularly changed engineering reports to favor clients,
which occurred when Quick worked at Rimkus, apparently from 1994
through 1996.  The Court finds that this testimony is potentially

18

relevant to show bias on the part of Rimkus if plaintiff can establish that the Rimkus witness and Quick worked for the company at the same time and that there is a nonhearsay basis for the proffered testimony.

**C.   Evidence Related to Danny Burns**

Finally, Allstate moves to exclude the trial testimony of and written estimate authored by Danny Burns, an expert witness for plaintiffs.  Plaintiffs intend to tender Burns as an expert in residential construction.  According to an affidavit filed in connection with plaintiffs' opposition to Allstate's motion for summary judgment last month, Burns is employed by Savoie Construction and performs residential building services.  (R. Doc. 55, Ex. W11).  He was the foreman on the home built for plaintiffs in 1993-94.  Based in part on that experience, Burns has opined that it would cost approximately $612,500 to rebuild a house substantially similar to the one he originally built for plaintiffs.  (*Id.* at W12).  Allstate contends that this estimate, as well as Burns' expected testimony, is inadmissible under Rule 702 because his opinion is not based on sufficient facts, he did not use a reliable methodology to arrive at his conclusions, and he has failed to disclose the basis of his opinions. Additionally, Allstate asserts that his testimony and opinions should be excluded because plaintiffs did not provide Allstate

19

with an expert report as required under Rule 26.

The Court finds that Allstate's arguments are without merit. Burns has sufficient experience in residential construction to serve as an expert witness in this case. He has been in the residential construction industry since 1984 and, in his role as a construction superintendent, has performed the same type of analysis that he was asked to do in this case numerous times. He also has previous experience with the Weiss property specifically. There is thus no question that Burns is qualified to be an expert witness in this case. As to Allstate's challenges to the manner in which Burns produced his estimate as to the cost of rebuilding plaintiffs' house, the Court finds that Burns' opinions are based on sufficient facts and methodology to be admissible under Rule 702. In his deposition, Burns testified that, in addition to his knowledge of the Weiss property, he based his opinion on estimates of the cost per square foot of three other properties that he is working on in the area. Allstate contends that because Burns did not use blueprints or subcontractor bids to produce his estimate and because he developed his estimate in three days, instead of his typical two weeks for a similar project, his opinions should be excluded. The Court holds otherwise. While Allstate can certainly seek to undermine the reliability of Burns' opinions on cross-

examination, these complaints are not sufficient to bar Burns from testifying as an expert witness.  However, to the extent plaintiffs have not produced the pricing documents on the other houses on which Burns relied for his estimate, the Court orders plaintiffs to immediately produce to Allstate this information.

As to Allstate's contention that Burns' testimony and written estimate should be excluded because plaintiffs never provided a full-blown expert report to Allstate under rule 26, the Court does not consider this an adequate basis for exclusion. The Court has been indulgent to both sides in this matter as to missed deadlines, late-filed motions, last-minute defenses, and the failure to comply with discovery rules.  Moreover, Allstate deposed Burns in preparation for trial, and his testimony is not rocket science.  Allstate will not be prejudiced in its ability to cross-examine this witness at trial.

The Court therefore denies this motion in limine, subject to the disclosure by Burns of the specific information he used to produce his estimate of the cost of rebuilding plaintiffs' house.


**V.    RULING ON UNRESOLVED ISSUE PRESENTED IN PRETRIAL MEMORANDA**

     **A.    Recovery of General Damages for Emotional Distress
         Under Section 22:1220**

The Court finds that La. Rev. Stat. § 22:1220 permits the

recovery of general damages, including mental anguish, provided
that these damages are proven.  Under Section 22:1220(A), any
insurer who breaches the duty of good faith and fair dealing
"shall be liable for *any* damages sustained as a result of the
breach." La. Rev. Stat. § 22:1220(A) (emphasis added).  Section
22:1220(B) lists the specific, and exclusive, acts by which an
insurer can breach the imposed duty of good faith and fair
dealing, if knowingly committed or performed.  They are:
misrepresenting pertinent facts or insurance policy provisions
relating to any coverages at issue; failing to timely pay a
settlement reduced to writing; denying coverage or attempting to
settle a claim based on an application which the insurer knows
was altered without notice to, or knowledge or consent of, the
insured; misleading a claimant as to the applicable prescriptive
period; failing to timely pay the amount of any claim due any
person insured by the contract after receipt of satisfactory
proof of loss when such failure is arbitrary, capricious, or
without probable cause; and failing to pay claims pursuant to La.
Rev. Stat. 22:658.2 when such failure is arbitrary, capricious,
or without probable cause [added February 23, 2006].  La. Rev.
Stat. § 22:1220 (B).  Section 22:1220(C) then starts, "In
addition to any general or special damages to which a claimant is
entitled for breach of the imposed duty . . . ."    La. Rev.

22

Stat. § 22:1220(C).  Thus, by its plain terms, the statute
clearly establishes that if an insurer intentionally commits one
of the specified types of conduct, the consequences are that the
insurer is liable for the damages imposed by the statute,
including "general or special damages."  As the Louisiana Supreme
Court recently stated, under Section 22:1220, "the award of
general or special damages, if requested, is mandatory . . . ."
*Sultana Corp. v. Jewelers Mut. Ins. Co.*, 860 So. 2d 1112, 1117
(La. 2003) (noting also that "[c]learly, Sultana is entitled to
seek general or special damages from its insurer); *see also
Felham Enterprises (Cayman) Ltd. v. Certain Underwriters at
Lloyds*, 2005 WL 2050284, * 31 (E.D. La. Aug. 2, 2005) (awarding
general damages for a violation of Section 22:1220); *Clark v.
McNabb*, 878 So. 2d 677, 686 (La. Ct. App. 2004) (same); *Holt v.
Aetna Cas. & Sur. Co.*, 680 So. 2d 117, 132 (La. Ct. App. 1996)
(same).  Further, as the Louisiana Supreme Court has defined the
term, general damages include "those which may not be fixed with
any degree of pecuniary exactitude but, which, instead, involve
mental or physical pain or suffering, inconvenience, the loss of
gratification of intellectual or physical enjoyment, or other
losses of life or lifestyle which cannot really be measured
definitively in terms of money."  *McGee v. A C And S, Inc.*, 933
So. 2d 770, 774 (La. 2006) (citing *Duncan v. Kansas City S. R.R.*,

23

773 so. 2d 670, 682 (La. 2000).

Allstate's reliance on the well-established principle that nonpecuniary damages cannot be recovered for breach of an insurance contract because the contract is not intended to gratify a nonpecuniary interest and plaintiffs have not shown that the insurer intended, through its failure, to aggrieve the feelings of the insured, is therefore misplaced. *See* La. Civ. Code art. 1998. Plaintiffs' claim for general damages such as emotional distress does not arise from a simple breach of their insurance contract. Rather, it is based on the asserted violation of Allstate's statutory duty under Section 22:1220 in one of the specified ways. The prohibited acts set forth in Section 22:1220(B) amount to intentional and vexatious wrongdoing directed toward an insured. The general and special damages award is thus aimed at, and limited to, a caliber of misconduct that goes well beyond ordinary an breach of contract. If plaintiffs can prove that Allstate acted in bad faith by knowingly committing or performing one of these acts, proven general or special damages are recoverable.

## VI. EVIDENTIARY OBJECTIONS

### A.  Plaintiff's Exhibits

Allstate objects to certain exhibits submitted by

24

plaintiffs.  The Court addresses these exhibits in order.

      *1.   Exhibit 1*

The Court addressed the Schutte claim file in defendant's motion in limine to exclude evidence related to other Katrina insurance claims.  It is inadmissible as irrelevant except for certain statements of Allstate representatives in the Claim Activity pages relative to the Dekemel property that may be used at trial to impeach Allstate representatives.  The Court, however, reserves the ultimate decision on whether to allow these statements to be used until the relevant time at trial.

      *2.   Exhibit 2*

The Court addressed the Nugent report in defendant's motion in limine to exclude evidence related to other Katrina insurance claims.  It is inadmissible for the reasons stated earlier.

      *3.   Exhibit 3*

The Court addressed the Dekemel report in defendant's motion in limine to exclude evidence related to other Katrina insurance claims.  Evidence as to the Dekemel property is generally admissible as it is relevant.  The Court, however, reserves ruling on the admissibility of the MACTEC report until plaintiffs lay a foundation for its admission at trial.

      *4.   Exhibits 4-5*

The Dammon engineering report titled "Effects on Lake

Pontchartrain" and the Dammon engineering report on 15 Treasure
Isle were part of the file on the Kelly property.  They have not
been authenticated and are inadmissible hearsay.  They are
therefore excluded.

> 5.   *Exhibit 6*

The Court addressed the admissibility of the Aucoin report
in defendant's motion in limine to exclude evidence related to
other Katrina insurance claims.

> 6.   *Exhibit 7*

The written estimate of Danny Burns is inadmissible hearsay.

> 7.   *Exhibit 8*

The Credit Collection Services "Notice" is irrelevant to the
issues to be tried.  The document is therefore excluded under
Rule 402.

> 8.   *Exhibits 9-10*

The entirety of the tape and transcript of a conversation
between plaintiffs and Jerry Higgins, a person hired by Allstate
as a troubleshooter to speak with its customers, is inadmissible
under Rule 403.  The recording contains numerous inflammatory and
irrelevant comments made by plaintiffs.  This material is
inseparable from any marginally relevant material on the tape.
Therefore, the generally low probative value of the tape is
substantially outweighed by the danger of unfair prejudice.

However, Higgins' statement regarding Allstate's policy to rely exclusively on engineering reports to determine the cause of an insured's loss is potentially admissible for impeachment purposes to the extent that Allstate's trial witnesses testify to the contrary.  Higgins' statement is not hearsay because it is the statement of an agent within the course and scope of his agency. Higgins specifically held himself out as speaking for Allstate on the call.

### 9.  Exhibit 11

The Court addressed this document from the Shearman claim file in defendant's motion in limine to exclude evidence related to other Katrina insurance claims.

### 10.  Exhibits 12-13

These documents relate to the deposition expenses for Craig Rogers' deposition.  Rogers is Allstate's expert witness and is a Rimkus engineer.  These documents involve collateral issues that would waste the jury's time and delay the trial.  The objection is therefore sustained under Rule 403.

### 11.  Exhibits 14-15

Allstate objects to the admission of a DVD and transcript of Jim Neva's deposition testimony.  Neva, who resides in Washington State, is unavailable to testify in person at trial.  Allstate contends that Neva should not be allowed to opine on the cause of

27

the destruction to plaintiffs' property because he is unqualified to serve as a forensic engineering expert.  Allstate further asserts that portions of the deposition are irrelevant.

The Court finds that Neva is qualified to offer opinions on the cause of the destruction to plaintiffs' property as an expert witness in the field of engineering.  Neva holds a college degree in engineering.  He testified that, during the course of his 35-year career, he has had extensive practical engineering experience with regards to examining buildings.  More importantly, in the aftermath of Hurricane Katrina, Rimkus, who is Allstate's engineering consultant, hired Neva's firm, Pacific International Engineering, to do field work in the storm-damaged areas of southeastern Louisiana.  He testified that, in this capacity, he conducted approximately 125 inspections of Katrina-damaged properties for which he was asked to offer a preliminary opinion as to certain storm-related damage issues on behalf of Rimkus.  Neva was therefore hired by an agent of Allstate's to opine on the same issues on which plaintiffs seek to admit Neva's testimony, namely the cause of the destruction to plaintiffs' property.  That, as Allstate contends, Neva might not be as qualified as Allstate's forensic engineer, or even plaintiffs' other expert witnesses, may go to the weight that should be accorded his opinions and is therefore a proper issue to raise on

28

cross-examination, but this potential fact alone does not
disqualify Neva from testifying as an expert witness in this
matter.  Moreover, Neva signed the Rimkus report that forms the
basis of both his expert testimony and that of Allstate's
engineering expert Craig Rogers.  The Court therefore finds
Allstate's argument that Neva is not qualified to opine on the
causes of the damage to plaintiffs' property when its own
engineering consultant relied, at least in part, on Neva's work
on this issue to be somewhat disingenuous.

Not all of the deposition is admissible, however.  The Court
excludes the following passages as irrelevant or so marginally
relevant that their probative value is substantially outweighed
by the potential of unfair prejudice or waste of time: testimony
as to other properties about which the Court has excluded
evidence under Rules 402 or 403, suits against Rimkus, the
Professional and Occupational Standards for Professional
Engineers and Land Surveyors in Louisiana, and whether some
person attempted to dissuade Neva from coming to Louisiana.  As
to the remainder of Neva's deposition, it is admissible, and the
parties are instructed to remove objections and attorney colloquy
from the video recording before presentation to the jury.

12.  *Exhibits 16-17*

These documents, which relate to the deposition of Jim Neva,

are irrelevant and thus inadmissible.

       *13.  Exhibit 18*

       The Professional and Occupational Standards of Professional Engineers and Land Surveyors document is a legal regulation and is not evidentiary.  It will not be admitted into evidence.

       *14.  Exhibit 20*

       The Accuweather report produced for claims relating to properties located at 41 and 42 Treasure Isle Drive is inadmissible hearsay.  The fact that plaintiffs sent this document to Allstate with their *McDill* demand letter does not make it a record of regularly conducted Allstate activity under Rule 803(6).  However, plaintiffs' expert states in his report that he relied on this document.  Further, it is apparent from engineering reports in this case that engineers rely on weather data compiled by others in forming opinions on causation of property damage.  Rule 703 provides: "If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." FED. R. EVID. 703.  Plaintiffs' expert witness therefore can inform the jury that he relied on this weather report, but the report will not be received in evidence.

       *15.  Exhibits 21*, 24

Plaintiffs' *McDill* demand letter sent to Allstate in May 2006 is generally relevant and admissible.  However, plaintiffs are instructed to redact any reference to claims under La. Rev. Stat. §§ 22:652 and 22:695, which are now irrelevant to this matter, as well as any attachments that have previously been deemed inadmissible in this ruling.

16.  *Exhibit 22*

The Rimkus "Terms and Conditions" is potentially relevant and admissible if a proper foundation for admission is laid at trial.  The Court reserves ruling on its admissibility.

17.  *Exhibit 23*

Allstate's memorandum of objections does not include an objection to this document.  Allstate has therefore waived any further objections to the admissibility of this document.

18.  *Exhibit 25*

The list of Allstate's representatives that dealt with plaintiffs' claim during the course of their claims process is inadmissible because it is not a proper summary under Rule 1006. It does not accurately summarize the underlying material that is purported to be summarized, which is a portion of plaintiffs' claim file.

19.  *Exhibit 26*

The Allstate.com documents are irrelevant and therefore

31

inadmissible as they pertain to the availability of excess flood coverage, an issue which has no bearing on plaintiffs' dispute under their homeowner's policy.

20.  *Exhibit 27*

This objection was withdrawn at the Court's hearing on April 5, 2007.

21.  *Allstate's pricing software*

Plaintiffs have not shown any admissible use of this evidence.  Indeed, they cannot explain what they intend to use this software to prove.  The software is excluded under Rule 402 as irrelevant.

**B.   Defendant's Exhibits**

Plaintiffs object to certain exhibits submitted by Allstate. The Court addresses these exhibits in order.

1.  *Exhibit 1*

The homeowner's policy claim file on the property located at 14 Treasure Isle, which was also owned by plaintiffs, has not been produced in defendant's benchbook.  It is potentially relevant only as to the issue of misrepresentations in connection with the boathouse.  The Court reserves ruling on this exhibit.

2.  *Exhibits 3-7*

These exhibits are relevant to the extent that they relate to the value of plaintiffs' property and/or the location of the

boathouse.

>    *3.   Exhibits 8-9*

These documents, which pertain to plaintiffs' recently purchased property at 210 Cypress Lakes Circle in Slidell, are relevant and admissible to the extent that they relate to the amount plaintiffs can recover under their homeowner's policy.

>    *4.   Exhibits 10-11*

These exhibits have been withdrawn.

>    *5.   Exhibits 12-15*

Allstate may not offer their own expert reports into evidence because they are inadmissible hearsay.

>    *6.   Exhibit 16*

The Market Conduct Report prepared by the Louisiana Department of Insurance is inadmissible, as any marginal relevance is substantially outweighed by considerations of delay, waste of time, and jury confusion. Counsel for Allstate conceded at the April 5, 2007 evidentiary hearing that the findings and conclusions in the report were based on an analysis of a random sampling of Allstate's Katrina and Rita claims.  Absent any indication that this report included an examination of the claims handling practices used in this case, the Court finds that its relevance is too attenuated to justify admission.  Further, other parts of the report are extraneous even to claims review.

Allstate's witnesses can testify to the constraints imposed on
their relevant activity by the number of claims spawned by
Hurricane Katrina.  Accordingly, the report is excluded under
Rule 403.

       7.   *Exhibit 17*

    Plaintiffs' memorandum of objections does not include an
objection to this document.  Plaintiffs have therefore waived any
further objections to the admissibility of these documents.

       8.   *Exhibits 24a & 24b (as numbered in the Pretrial
Order)*

    Allstate seeks admission into evidence of any documents
pertaining to the adjustment of insurance claims of other
residents on Treasure Isle, as well as any engineering reports
that relate to those claims.  The Court finds that such an
overbroad designation of exhibits is improper, and further, to
the extent that these potential documents and reports relate to
any properties besides the Dekemel and Schutte properties, there
is no foundation to demonstrate their relevance.  Allstate may
call a witness to discuss the Dekemel claim, and to the extent
evidence is received on the Schutte claim, to explain Allstate's
rationale regarding the Schutte claim.

## VII. CONCLUSION

For the foregoing reasons, it is so ordered.


New Orleans, Louisiana, this <u>9th</u> day of April, 2007.


                            _____

                                   SARAH S. VANCE

                     UNITED STATES DISTRICT JUDGE